## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. HERBERT LEONARD POLLACK

[Misc. (BV) No. 13, September Term, 1980.]

*Decided March 4, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*J. Edward Davis* for respondent.

*Henry J. Myerberg, Assistant Bar Counsel,* for petitioner.

PER CURIAM:

The Attorney Grievance Commission, acting through Bar Counsel, filed a Petition for Disciplinary Action against Herbert Leonard Pollack, alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. We referred the matter, pursuant to Maryland Rule BV9 b, to Judge James W. Murphy, an Associate Judge of the Supreme Bench of Baltimore City, to make findings of fact and conclusions of law. After conducting an evidentiary hearing,

Judge Murphy, on November 7, 1980, filed detailed findings and conclusions as follows:

### "FINDINGS OF FACT

"Respondent had been engaged in real estate title matters for at least two (2) years prior to being admitted to the practice of law in 1958.

"For most of his legal career he has been employed by the Mayor and City Council of Baltimore either as a right-of-way negotiator or as an assistant city solicitor in the Real Estate Division. His private law practice while so employed has been very minimal.

"For two (2) brief periods, one in 1961 and the other in 1976, he essayed attempts at the private practice of law as a sole practitioner, but on both occasions he returned to employment with Baltimore City.

"Respondent now has twenty-one (21) years in the Municipal Retirement System and can draw full retirement at the age of sixty-five (65).

"Sometime in September, 1977, Charles Lansberry, Jr., and Benjamin C. Brooks purchased at public auction in Baltimore City several parcels of real estate known as 1108, 1110 and 1112 West Fayette Street and 1311 Druid Hill Avenue. Thereupon, and in the month of September, 1977, the purchasers engaged Baltimore attorney James E. Crawford for the purpose of processing the purchase to have the title eventually recorded in the names of the purchasers. Because Mr. Crawford did not do that specific type work, he advised the purchasers that he would refer the matter to Baltimore attorney Herbert L. Pollack, the Respondent herein.

"In furtherance of this advice, Mr. Crawford contacted the Respondent in October, 1977, and furnished the Respondent with a copy of the aforementioned auction sale notice which had appeared in The Daily Record.

"The Respondent, for a fee, thereupon completed a title examination of the properties, prepared an appropriate deed

from the sellers to the purchasers, and on November 10, 1977, held settlement at which time the deeds were properly executed.

"Following the settlement referred to above, the Respondent took the appropriate documents and checks necessary for recordation of the deed and payment of the transfer taxes for the purpose of recording the deed among the appropriate land records of Baltimore City.

"On or about March 31, 1978, the purchasers, while examining title for said properties as part of a real estate study course project, determined that the deed had not yet been recorded. On the same day, the purchasers coincidentally met the Respondent on the street near the Baltimore City courthouse and advised the Respondent that the deed was not recorded, and the Respondent stated that he would follow it up.

"Thereafter, the Respondent caused the deed to be recorded among the land records of Baltimore City on June 30, 1978, and the appropriate recording costs and transfer taxes were paid at the same time.

"After settlement, Respondent had put the checks and deed in a file since it was too late to record the deed on that day. The following day, a Friday, November 11, 1977, happened also to be a legal holiday, i.e., Veterans' Day. Thereafter, Respondent forgot about recording the deed until March 31, 1978, when confronted by the purchasers. A search of his office and home failed to turn up the deed.

"Being very experienced and well-versed in real estate matters, the Respondent was fully aware of the possible consequences from the failure to record a deed. At no time did he call the purchasers to advise that he could not find the deed. He may have spoken to the referring attorney, Crawford, but did not advise him that the deed was lost. At no time did Respondent seek to obtain a confirmatory deed.

"It was not until June of 1978 that Respondent found the deed and checks in a drawer in the Land Record Office of the Superior Court of Baltimore City. Since he spent a considerable period of time in said office, he had been using this

drawer with the permission of the Clerk of the Superior Court.

"Upon finding said deed, Respondent ordered a new lien sheet and recorded the deed as previously stated.

"The payments incidental to the recording costs and the transfer taxes were drawn by Mr. Crawford on his escrow account to the order of 'Robert H. Bouse, Clerk of Superior Court of Baltimore City' and delivered to the Respondent. None of the funds described herein were at any time misused, misapplied or misappropriated by the Respondent.

"At no time during the period of the entire transaction described hereinabove were the sellers or the purchasers in any way whatsoever injured or damaged; the sellers at the time of the settlement were paid the full purchase price for the sale; there was no mortgage or other financing of the purchase attendant to the transaction; there were no intervening liens, judgments or other encumbrances placed on the properties at any time; the purchasers at no time made any attempt to resell the properties or to have the properties encumbered as collateral on any intended loans or mortgages.

"The record discloses that the Respondent was suspended from the practice of law for a six (6) month period in 1977, but the reason therefor was not stated.

"William Hoffman, Esq., Chief of the Real Estate Section of the City Solicitor's Office, secured a leave of absence for Respondent so that he could resume his employment with the City after his period of suspension. Benjamin Brown, Esq., City Solicitor and Mr. Hoffman testified that Respondent is an excellent employee, both knowledgeable and diligent.

"The Court finds the Respondent to be inexcusably negligent in the recording of the deed to the properties in question.

## "CONCLUSIONS OF LAW

"From the above facts, the Court concludes that Respondent has violated the following Disciplinary Rules:

"(1) The inexcusable failure of the Respondent to timely record the deed covering transfer of the properties 1108, 1110, and 1112 West Fayette Street and 2311 Druid Hill Avenue is a violation of Disciplinary Rule 6-101 (A) (3), which states:

'Failing to Act Competently.

(A) A lawyer shall not:
* * *
(3) Neglect a legal matter entrusted to him.'

"(2) The failure of the Respondent to disclose to the purchasers or the referring attorney that he could not locate the deed during the period from. March 31, 1978 to June 30, 1978, and his failure to take any action to protect the clients during that period are a violation of Disciplinary Rule 1-102 (A) (6), which states:

'Misconduct.

(A) A lawyer shall not:
* * *
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

"(3) Because of the above violations, Respondent is in violation of Disciplinary Rule 1-102 (A) (1), which states:

'Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.' "

Respondent did not take any exceptions to Judge Murphy's findings. Instead, he submitted a written recommendation that he be given a severe public reprimand for his misconduct but be permitted to continue in the practice of law as a public attorney with the City of Baltimore "subject to such conditions as this Court may impose." In this con-

nection, Pollack urges that we consider the narrow and specialized field of his practice with the City Solicitor's Office; that we take cognizance of the fact that his present misconduct, as well as his past disciplinary record, involved legal matters entrusted to him in the private practice of law; that we consider that he has not engaged in private practice since 1977 and does not intend to do so in the future; and that we also consider that he will limit his practice to representing the City of Baltimore as an Assistant City Solicitor until his retirement. The respondent points to the evidence of his competence as an Assistant City Solicitor, attested to by his supervising City Solicitor in the Real Estate Section of the City Solicitor's Office and by the City Solicitor himself. He asks that we recognize, as they do, that his competence as a public employee lawyer far overshadows his misconduct in this case.

Bar Counsel has expressed opposition to Pollack's recommendation that the appropriate sanction is a public reprimand. He suggests that the past disciplinary record of an attorney is to a large degree the measuring stick for determining the severity of the sanction needed to protect the public. Bar Counsel draws attention to past disciplinary action against the respondent, as set forth in *Attorney Grievance Comm'n v. Pollack,* 279 Md. 225, 369 A.2d 61 (1977), which involved neglect of three legal matters entrusted to him while he was engaged in private practice, and which resulted in a six-month suspension. Bar Counsel also points out that Pollack's area of legal expertise within the City Solicitor's Office is real estate and that the neglect in this case involved his failure to timely record a deed. In addition, Bar Counsel invites our attention to the fact that in 1966 Pollack was issued a private reprimand by the Grievance Committee of the Maryland State Bar Association for misconduct in handling three legal matters while engaged in private practice, one of which involved delay in recording a ground rent deed.

Both Bar Counsel and respondent's counsel have stressed the significance of the testimony of the City Solicitor and of Pollack's immediate supervisor in the City Solicitor's Office

with respect to Pollack's competence and diligence in handling real estate matters on behalf of the City of Baltimore. It was noted that when Pollack was suspended from the practice of law for six months in 1977, the City Solicitor afforded him a leave of absence during the period of his suspension, and when the suspension was terminated, he was reemployed as an Assistant City Solicitor.

The severity of the sanction to be imposed for misconduct generally depends on the facts and circumstances of each case. Bar Counsel does not press for Pollack's disbarment. Although we think the respondent's gross neglect in this case, considered together with his earlier misconduct, brings him perilously close to disbarment, *see, e.g., Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975), we shall not impose that extreme sanction in this case. In view of the strong support manifested by the City Solicitor and members of that office in opposition to disbarment; the fact that Pollack, a long-time employee of the City Solicitor's Office, has now limited his practice to real estate matters involving the City (where his work will be closely supervised); and his willingness to accept limiting conditions on the practice of law as part of the sanction to be applied in this case, we think it appropriate that Pollack be suspended for an indefinite term. Pollack's suspension, however, will be without prejudice to his right to file a motion sixty days after the date of the order in this case, seeking its termination upon these conditions: (1) that his practice of law will be limited solely to practice conducted under the supervision of one or more attorneys who are approved for this purpose by this Court, after recommendation by the Attorney Grievance Commission, and who maintain their principal office for the practice of law out of the same office from which Pollack practices and (2) that he will have paid all costs incurred in connection with this proceeding. We think this disposition of the matter adequately protects the public interest. *Compare*

*Attorney Griev. Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979).

> *It is so ordered; respondent shall pay all costs as taxed by the clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Herbert Leonard Pollack.*