ATTORNEY GRIEVANCE COMMISSION OF
MARYLAND *v.* KENNETH
ANDREW BAILEY

[Misc. (BV) Nos. 14 & 23, September Term, 1981.]

*Decided October 26, 1982.*

The cause was argued before MURPHY, C. J., and SMITH,
ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Walter D. Murphy, Jr., Assistant Bar Counsel,* with whom was *Melvin Hirshman, Bar Counsel,* on the petition, for petitioner.

No appearance for respondent.

SMITH, J., delivered the opinion of the Court.

Because Kenneth Andrew Bailey apparently learned nothing from our decision in *Attorney Griev. Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979), we shall now impose the ultimate sanction of disbarment.[1] We have here two petitions for disciplinary action filed against Bailey by Bar Counsel, acting on behalf of the Attorney Grievance Commission of Maryland.

---

1. In *Attorney Griev. Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979), the attorney failed to properly handle a real estate transaction. We said in that opinion that the trial judge "specifically concluded that Bailey 'did not intend to steal or consciously misappropriate the funds in question.' " *Id.* at 635. We then went on to say:

"Had there been a finding here of dishonesty supported by clear and convincing evidence or if we concluded that the trier of fact here was clearly in error in determining that this man did not intend to steal or consciously misappropriate the funds in question, we would disbar." 286 Md. at 635-36.

We "conclude[d] that the proper sanction . . . for its deterrent effect upon the Bar generally [was] a suspension of three years accounting from 30 days from the date of filing of [our] opinion." 286 Md. at 637. We said, however:

"We realize that upon the expiration of this suspension Bailey may continue to be an incompetent attorney in transactions of this sort. We are cognizant of the fact that he is said to perform satisfactorily in the trial of criminal cases in the District Court and the circuit courts. Thus, pursuing the concept of lawyer counseling, after 30 days of Bailey's suspension has been served we will entertain a motion by him for lifting the remainder of the suspension." 286 Md. at 637-38.

We went on to lay out a program by which he could be reinstated but "it w[ould] be only on the condition that for the remainder of the original period of suspension he m[ight] participate in no field of the law other than the trial of criminal cases unless he [was] associated in each and every endeavor outside the criminal field with some other attorney or attorneys whom the Attorney Grievance Commission or its designee has previously approved." *Id.* at 638. He was reinstated on April 8, 1980, subject to the conditions imposed by us.

I

No. 14 concerns a series of actions arising from employment which originated prior to our decision in the earlier case, although some of the activity concerning which complaint is made occurred after Bailey's reinstatement. Pursuant to Maryland Rule BV9, we designated the Honorable Robert J. Woods of the Seventh Judicial Circuit to hear the charges.

Judge Woods has filed a report with us in which, among other things, he has found that Bailey placed $1,000 in cash in a book for safekeeping. This was money belonging to Bailey's client, entrusted to him to cover costs of printing a brief and the like. Obviously, it should have been deposited in an escrow account in a bank. Both the Attorney Grievance Commission and Bailey excepted to the trial judge's findings of fact and conclusions of law. Generally, we find the exceptions of the Commission to be well taken and those of Bailey to be without merit. We shall, however, enter into no discussion of those because Bailey's ultimate fate is sealed by his actions in No. 23.

II

In No. 23 Bar Counsel, pursuant to Maryland Rule BV16, requested that we suspend Bailey from the practice of law by virtue of his conviction on November 30, 1981, of violating Maryland Code (1957, 1981 Repl. Vol.) Art. 10, § 44, relative to escrow funds of attorneys.[2]

---

2. At the time of Bailey's acts Maryland Code (1957, 1981 Repl. Vol.) Art. 10, § 44 stated:

"(a) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of written instructions or court order to the contrary shall be expeditiously deposited in an account maintained as a separate account or accounts for funds belonging to others. In no event shall he commingle any such funds with his own or use any such funds for any purpose other than the purpose for which such funds were entrusted to him.

"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be

Bailey's conviction was under a three count information filed by the State's Attorney for St. Mary's County. The first two counts charged that he stole money from two different clients in an amount greater than $300. He entered a guilty plea to the third count which concerned Art. 10, § 44. Bailey was sentenced to incarceration for five years. His sentence was suspended and he was placed on supervised probation for five years subject to a number of conditions. On January 4, 1982, we directed that Bailey be suspended immediately from the practice of law.

Bar Counsel, acting on behalf of the Attorney Grievance Commission, then filed a petition with us seeking disciplinary action against Bailey upon the basis of this conviction. He alleged violation of Disciplinary Rules 1-102(A); 6-101(A)(1) and (3); 7-101(A)(2) and (3); 7-102(A)(3), (4), (5), (6), and (8); and 9-102(A) and (B).[3] Pursuant to Rule BV9, we

---

proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) hereof, shall be guilty of a misdemeanor for each such violation and on conviction thereof, shall be fined not more than five thousand dollars ($5,000.) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

This section was enacted as a direct outgrowth of scandals in the Washington metropolitan area relative to delayed real estate settlements. See the discussion in *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 588, n.2, 403 A.2d 1241 (1979).

3. The rules in question state:

"DR 1-102
Misconduct.
   (A)  A lawyer shall not:
        (1) Violate a Disciplinary Rule.
        (2) Circumvent a Disciplinary Rule through actions of another.
        (3) Engage in illegal conduct involving moral turpitude.
        (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
        (5) Engage in conduct that is prejudicial to the administration of justice.
        (6) Engage in any other conduct that adversely reflects on his fitness to practice law."
"DR 6-101
"Failing to Act Competently.

designated the Honorable Perry G. Bowen, Jr., of the Seventh Judicial Circuit to hear the charges.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

(2) ...

(3) Neglect a legal matter entrusted to him."

"DR 7-101

"Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) ...

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

"DR 7-102

"Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:

(1) ...

(2) ...

(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

(4) Knowingly use perjured testimony or false evidence.

(5) Knowingly make a false statement of law or fact.

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

(7) ...

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule."

"DR 9-102

"Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portions shall not be withdrawn until the dispute is finally resolved.

Judge Bowen has made a comprehensive report to us. His findings of fact state:

"During the month of October 1981, Bailey undertook in his capacity as an attorney-at-law to act as settlement attorney in a real estate transaction in St. Mary's County, Maryland in which Jane D. Y. Miller was to sell to Richard Glenn Olson and Janet Lee Olson, Lot Eighteen Section A of Town Creek Subdivision for a total price including costs of Sixty Thousand Two Hundred Ninety-two Dollars and Ninety Cents. On October 7, 1981, Bailey received a check drawn to his order in the amount of Fourteen Thousand Two Hundred Ten Dollars and Nineteen Cents. This check represented all of the cash involved in the settlement because the remainder of the consideration consisted of the unpaid balances of first and second mortgages which were assumed by the purchasers. Promptly after October 7, 1981, Bailey was to do the following with respect to the disbursement of the funds represented by this check.

1. Pay the recording costs, transfer tax and documentary stamps in the amount of     $697.90
2. Pay to Colonial Mortgage for an assumption fee     75.00
3. Pay to Pioneer National Title Insurance Company for premium     207.00

(B) A lawyer shall:

(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

(2) Indentify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

4. Pay to Jane D. Y. Miller (Seller)     902.27
5. Pay to Maryland National Bank the balance of its existing second mortgage     11,997.52

"These disbursements plus his fee of One Hundred Seventy-five Dollars and the costs of the Title abstract of One Hundred Thirty-eight Dollars which Bailey claimed at sentencing in the criminal case he had paid before settlement made up the entire amount represented by the check.

"At the settlement on October 7, 1981, Bailey advised the parties thereto that he would pay the expenses of the settlement the very next day and showed one of the parties checks he had already prepared for this purpose.

"On October 8th Bailey having endorsed the settlement check attempted to cash it at the First National Bank of St. Mary's in Leonardtown. He was informed that he could deposit the check into his account but that it would have to clear before he could write checks against it. Bailey thereupon took back the check and went to the Cedar Point Federal Credit Union in Lexington Park, Maryland upon which it was drawn, presented it and obtained in exchange for it a check in the same amount drawn by the Credit Union to his order. With the Cedar Point Credit Union's check Bailey returned to the First National Bank of St. Mary's in Leonardtown. There he deposited into his escrow account $11,500.00; into the account of his wife Joan D. Bailey $1,500.00; into the account of Mike Heimer a golf professional $1,000.00 and took the remaining $210.19 in cash. At the time he deposited the $11,500.00 in his escrow account it was overdrawn in the amount of $27.01. Subsequently Bailey drew three checks to himself against the $11,500.00 in his escrow account totalling Three Thousand Six Hundred Dollars. On or about October 9, 1981 First National Bank of St. Mary's took funds in the amount of $4,054.90 from Bailey's

escrow account to apply to debts Bailey owed the bank which had nothing to do with the settlement which generated the $11,500.00 deposit. The deposit to the account of Michael Heimer was applied by him at Bailey's direction to Club dues, golf club repairs, golf cart rental, other personal property and tax thereon. None of these disbursements were related to the proper disbursements that Bailey was obligated to make and none of them were authorized by any of the parties to the settlement. On October 23, 1981 Bailey replaced the funds represented by the settlement check with $210.19 from his account at First National Bank of St. Mary's and $14,000.00 from the proceeds of a loan by that Bank to Term Serve, Incorporated, a Corporation owned by his relatives. On November 30, 1981, Bailey pleaded guilty in Criminal No. 4792 in the Circuit Court for St. Mary's County to violation of Article 10 Section 44 of the Annotated Code of Maryland by using funds with which he was entrusted for a purpose other than the purpose for which the funds were entrusted to him. The same day he was sentenced to the jurisdiction of the Division of Corrections for five years, the sentence to incarceration was suspended and he was placed on probation for five years. A special condition of his probation was that he would not practice law for five years from January 31, 1982."

Judge Bowen's conclusions of law include:

"Bailey's conduct in not paying promptly the unpaid balance of the mortgage which should have been paid and released as part of this transaction and his failure to record promptly the instruments constituting the transaction was conduct which violated [DR 6-101 (A)] (1) in that he attempted to handle a matter that he knew or should have known he was not competent to handle, without

associating with him a lawyer who was competent to handle it. This is more especially so if the record of Bailey in a previous matter in which the facts are very similar is considered. This member of the Court heard the testimony in that case and a part of the disposition of those charges was that Bailey must practice this type of law under supervision.[4]

"This Court concludes that the evidence discloses deliberate design not neglect and therefore fails to establish a violation of Subsection (3) 'Neglect of a legal matter entrusted to him.'

"Disciplinary Rule 7 - 101 'Representing a Client Zealously'

"Bailey's actions in not recording the instruments constituting the real estate transaction and in not paying the balance of an existing mortgage with the funds entrusted to him for that purpose violated Subsection (A) (2) and (3) of this Rule in that

(2) He failed to carry out a contract of employment entered into with a client for professional services and

(3) Prejudiced and damaged his client during the course of the professional relationship by exposing his clients to the accumulation of additional interest on the existing mortgage and to the possibility of loss or damage by intervening claims against the sellers.

"Disciplinary Rule 7 - 102 'Representing a Client Within the Bounds of the Law'

"Bailey's conduct in stating that he was going to disburse the funds generated by this transaction the next day, his immediate and deliberate taking of a substantial part of the money for his own use and his use of prepared checks to mislead the

---

4. Judge Bowen was the trial judge assigned to hear the evidence in *Attorney Griev. Comm'n v. Bailey,* 286 Md. 630, 408 A.2d 1330 (1979), to which we earlier alluded.

parties to the transaction violated Subsections (3), (5) and (8) of this Rule in that

(3) He concealed and knowingly failed to disclose a fact that he was required by law to reveal, that is, his intention not to complete this transaction as he was required to do.

(5) He knowingly made a false statement of fact that he was going to use his prepared checks to disburse the settlement funds the next day and

(8) He knowingly engaged in other illegal conduct by stealing a substantial part of the settlement funds.

"Disciplinary Rule 9 - 102 'Preserving Identity of Funds and Property of a Client.'

"Bailey's conduct in depositing $1,500.00 into his wife's account and $1,000.00 into the account of the golf professional Heimer to be credited to Bailey's personal bills and his subsequent withdrawal of $3,600.00 by writing checks to himself for money to which he had no right and even his deposit of part of the funds into an overdrawn account and one from which the bank withdrew $4,054.90 to satisfy debts Bailey owed it which had no relation to the transaction which generated those funds violated Subsections (A) and (B) of (3) of this Rule in that

(A) He did not deposit all of his clients' funds in an identifiable bank account separate from his own funds as required by this Rule and

(B) (3) He failed to maintain complete records of all of his clients' funds and to render an appropriate account of the same."

There was clear and convincing evidence to support Judge Bowen's findings of fact.

## III

Given Judge Bowen's findings of fact and conclusions of law, our course of action becomes clear. In *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 318 A.2d 811 (1974), Judge Digges said for the Court:

"[T]his Court has consistently adhered to the view, both prior to 1970 (when we reviewed disciplinary actions only on appeal at the instance of the respondent-attorney), *Balliet v. Balto. Co. Bar Ass'n,* [259 Md. 474, 270 A.2d 465 (1970)]; *Fellner v. Bar Ass'n,* [213 Md. 243, 131 A.2d 729 (1957)]; *In the Matter of Lombard,* 242 Md. 202, 218 A.2d 208 (1966); *In Re Williams,* 180 Md. 689, 23 A.2d 7 (1941); and since that date (when we assumed original and complete jurisdiction over these pro-ceedings), *Bar Ass'n v. Marshall,* [269 Md. 510, 307 A.2d 677 (1973)]; *Bar Ass'n v. Cockrell,* 270 Md. 686, 313 A.2d 816 (1974); *Maryland St. Bar Ass'n v. Callanan,* 271 Md. 554, 318 A.2d 809 (1974), that when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, not shown to be present here, disbarment followed as a matter of course. To do other than disbar the respondent in this case, therefore, would constitute a travesty of our responsibility." 271 Md. at 553.

No useful purpose would be served by citing and reviewing the host of cases in which we have made similar statements. The public interest is protected when we discipline an attor-ney since it demonstrates both to the public and to the legal profession the type of conduct on the part of officers of this Court which we will not tolerate without sanction. See, *e.g., Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940 (1980), *cert. denied,* 450 U.S. 970 (1981); and *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 597, 403 A.2d 1241 (1979). No compelling circumstances justifying a

sanction less than disbarment have been presented here. Thus, it follows that Bailey shall be disbarred.

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including costs of all transcripts, pursuant to Maryland Rule BV15 c, for which sum judgment is entered in favor of the Attorney Grievance Commission against Kenneth Andrew Bailey.*