# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. JAMES EARL STANCIL

[Misc. (BV) No. 17, September Term, 1982.]

*Decided August 5, 1983.*

326

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), specially assigned.

*Glenn M. Grossman, Assistant Bar Counsel,* with whom was *Kendall R. Calhoun, Assistant Bar Counsel,* on the petition, for petitioner.

*George L. Russell, Jr.,* with whom was *Kenneth L. Thompson* on the exceptions, for respondent.

DAVIDSON, J., delivered the opinion of the Court.

The Attorney Grievance Commission (Commission) through Bar Counsel filed a petition for disciplinary action against James Earl Stancil (Stancil) alleging violations of the Disciplinary Rules of the Code of Professional Responsibility. Pursuant to Maryland Rule BV9 b, this Court referred the matter to Judge Robert L. Karwacki of the Eighth Judicial Circuit. On 24 November 1982, after an evidentiary hearing, the hearing judge filed a written Memorandum of Findings of Fact and Conclusions of Law as follows:

"The Petition of the Attorney Grievance Commission of Maryland ("The Commission") requesting disciplinary action against the respondent and his

answer thereto came on for hearing on October 29, 1982. The testimony offered at that hearing together with the exhibits received establish clear and convincing evidence of the following facts relevant to this controversy.

"On September 14, 1980, James Edward Morris, Jr. consulted Mr. Stancil concerning representation in connection with his domestic difficulties. Mr. Stancil quoted Mr. Morris a fee of between $300.00 and $350.00 for representing him. The next day Mr. Morris paid the respondent a $150.00 retainer on his quoted fee. Mr. Stancil immediately prepared a Bill of Complaint for divorce *a vinculo matrimonii* which was signed by Mr. Morris.

"On September 16, 1980, Mr. Morris met with Mr. Stancil at his law office, advised him that he needed money, and offered to sell the respondent his 1973 Lincoln Continental. Although the respondent thought the vehicle was worth $500 or $600, he offered Mr. Morris $100.00 which Mr. Morris accepted, executing an assignment of the title to the respondent in exchange for the purchase price. On September 17, 1980, the respondent traveled to the office of the Motor Vehicle Administration, transferred the automobile to his name, and applied for a temporary registration of the vehicle in his name.

"Mr. Morris immediately thereafter complained about the inadequacy of the purchase price and, after several telephone conversations with Mr. Stancil, came to his office on September 19, 1980 and terminated the respondent's services as his attorney in the domestic difficulties he was having with his wife. On that day Mr. Stancil refunded $75.00 of the retainer which he had been paid to Mr. Morris. Thereafter Mr. Morris continued his complaints concerning the automobile transaction and threatened the respondent with legal action and a complaint to The Commission. In an attempt to

forestall either or both Mr. Stancil paid Mr. Morris an additional $900.00 in cash sometime between September 19, 1980, and October 3, 1980. When the complaints of Mr. Morris still persisted Respondent paid him an additional $500.00 in cash on October 3, 1980. At this time he required Mr. Morris to sign a receipt for the $1,500.00 which he had been paid for the automobile.

"Notwithstanding the fact that his attorney-client relationship with Mr. Morris had been terminated on September 19, 1980, the respondent filed the Bill of Complaint, which he had prepared for Mr. Morris' signature on September 15, 1980, in the Circuit Court No. 2 of Baltimore City on October 21, 1980. He continued his appearance in that litigation despite the complaints of Mr. Morris which included a certified letter from Mr. Morris sent him on January 9, 1981 demanding that he withdraw from the case. It was not until after Mr. Stancil received a letter from Assistant Bar Counsel sent him on October 22, 1981, advising him that Mr. Morris had filed a complaint against him with The Commission that he finally withdrew his appearance on behalf of Mr. Morris on November 17, 1981.

"The letter of October 22, 1981, from Assistant Bar Counsel attached the letter of complaint and documentary support therefor which had been received by The Commission from Mr. Morris. Mr. Stancil was asked to reply to the complaint within fifteen days. The respondent in answering the allegations made by Mr. Morris that the respondent had defrauded him in connection with his transfer of the 1973 Lincoln to the respondent, replied

'In reference to the purchase of the car, which was separate and apart from the legal matters, that was a simple sale and buy. Sometime during my contact with Mr. Morris he indicated

to me that he had a car for sale. I looked at the car, and decided to purchase same. I gave him $1,500.00 for it and had him sign a receipt for the money I gave him for the car.'

"Based upon these facts this Court concludes:

(1) that the respondent violated DR 2-110 (B) (4) [1] of the Code of Professional Responsibility in failing to withdraw from his employment as the attorney for Mr. Morris in the litigation instituted by Mr. Morris against his wife in the Circuit Court No. 2 of Baltimore City after he was discharged by Mr. Morris on September 19, 1980;

(2) that the respondent violated DR 1-102 (A) (4) [2] of the same Code when, in responding to Assistant Bar Counsel's letter of inquiry with regard to Mr. Morris' complaint with The Commission, he misrepresented the true nature of the payments which he made to Mr. Morris after his purchase of Mr. Morris' automobile on September 16, 1980. (As the respondent testified before the Inquiry Panel of The Commission he paid $1,400.00 to Mr. Morris between September 19, 1980, and October 3, 1980, to avoid

---

1. DR 2-110 (B) (4) provides:

"(B) Mandatory withdrawal.

A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

. . .

"(4) He is discharged by his client."

2. DR 1-102 (A) (4) provides:

"(A) A lawyer shall not:

. . .

"(4) Engage in conduct involving dishonesty, fraud, deceit, or *misrepresentation.*" (Emphasis added.)

being sued by Mr. Morris for alleged fraud in connection with his purchase of Mr. Morris' automobile for $100.00 and to attempt to dissuade Mr. Morris from filing a complaint with The Commission. These payments and the reasons which prompted them hardly could be candidly described as 'a simple sale and buy' of a motor vehicle); and,

(3) that the respondent violated DR 1-102 (A) (5) [3] in paying $1,400.00 to Mr. Morris at least in part to discourage Mr. Morris from filing a complaint with The Commission concerning the respondent's conduct in connection with his representation of Mr. Morris in September of 1980."

Stancil filed exceptions to the fact that the hearing judge did not make certain findings of fact supported by the record and to the conclusion that he had violated DR 1-102 (A) (4) and (5). Additionally, despite his concession that he had violated DR 2-110 (B) (4), he recommended that no sanction be imposed. The Commission filed exceptions to the conclusion that Stancil had not violated DR 1-102 (A) (6),[4] and recommended that he "be suspended for a period of thirty (30) days. . . ."

We have made an independent review of the record and have concluded that the hearing judge's findings of fact are

---

**3.** DR 1-102 (A) (5) provides:

"(A) A lawyer shall not:

. . .

"(5) Engage in conduct that is prejudicial to the administration of justice."

**4.** DR 1-102 (A) (6) provides:

"(A) A lawyer shall not:

. . .

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

supported by clear and convincing evidence. *Attorney Grievance Comm'n v. Bailey,* 294 Md. 526, 535, 451 A.2d 1210, 1214 (1982); *Attorney Grievance Comm'n v. Stewart,* 285 Md. 251, 260, 401 A.2d 1026, 1030-31, *cert. denied,* 444 U.S. 845, 100 S.Ct. 89 (1979). Accordingly, we adopt those findings of fact. Additionally, we adopt the hearing judge's conclusion that Stancil violated DR 2-110 (B) (4) and DR 1-102 (A) (4) and (5).

The only remaining question is the appropriate sanction to be imposed. The severity of the sanction to be imposed for misconduct generally depends upon the facts and circumstances of the case. *Attorney Grievance Comm'n v. Montgomery,* 296 Md. 113, 120, 460 A.2d 597, 600 (1983); *Attorney Grievance Comm'n v. Pollack,* 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). This Court has previously determined that under certain circumstances a public reprimand is the appropriate sanction when an attorney has been found to have violated various disciplinary rules, including DR 1-102 (A) (4) and (5).

In *Attorney Grievance Commission v. O'Neill,* 285 Md. 52, 400 A.2d 415 (1979), an attorney made misrepresentations to a judge, an assistant State's attorney, and an agent of the Division of Parole and Probation, indicating that he had paid certain court costs that he had not in fact paid. The attorney was found to have violated DR 1-102 (A) (4), (5), and (6). In determining the appropriate sanction to be imposed, this Court took into account the fact that the attorney was a neophyte; that the three falsehoods occurred on the same day; that on that day he admitted to the judge that he had lied; and that thereafter he expressed contrition. This Court concluded that a public reprimand was the proper sanction.

In *Attorney Grievance Commission v. Heinze,* 293 Md. 193, 442 A.2d 570 (1982), an attorney made a misrepresentation indicating that he had filed suit when in fact he had not. The attorney was found to have violated DR

1-102 (A) (4) and (5), DR 6-101,[5] DR 7-101,[6] and DR 7-102.[7] In determining the appropriate sanction to be imposed, this Court took into account the fact that the attorney had practiced law for approximately 23 years; that at the time of his transgressions, he had many personal problems; and that the client was not harmed because the attorney had provided full compensation for any possible financial loss. This Court determined that a public reprimand was the proper sanction to be imposed.

Here, there was evidence to show that Stancil has practiced law in Maryland for approximately 10 years; that no other complaints have ever been filed against him; and that he enjoys an excellent reputation as an attorney. Moreover, there was evidence to show that at the time of his violations he was subjected to considerable harassment by Morris, and that avoidance of a disciplinary proceeding was not necessarily his primary motivation in making payments to Morris. Indeed, Stancil explained, without contradiction, that on various occasions Morris caused disturbances in his office, frequently called him at home, and repeatedly threatened both to sue him and to bring a disciplinary action against him; that his purpose in paying Morris was not only to avoid the filing of a disciplinary action, but also to compro-

---

5. DR 6-101 (A) (3) provides:
   "(A) A lawyer shall not:
   . . .
   "(3) Neglect a legal matter entrusted to him."
6. DR 7-101 (A) (2) provides:
   "(A) A lawyer shall not intentionally:
   . . .
   "(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105."
7. DR 7-102 (A) (3) and (5) provide:
   "(A) In his representation of a client, a lawyer shall not:
   . . .
   "(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.
   . . .
   "(5) Knowingly make a false statement of law or fact."

mise Morris' civil claim against him, to avoid further harassment, and to protect his standing in the community; and that he never indicated that he would pay or had paid Morris for the purpose of preventing the filing of the disciplinary action. Finally, there was no evidence to show that Morris had suffered any harm as a result of Stancil's violations.

In our view, Stancil's conduct was not sufficiently grievous to warrant the sanction of suspension. *Cf. Montgomery,* 296 Md. at 120-21, 460 A.2d at 600-01; *Attorney Grievance Comm'n v. Sherman,* 295 Md. 229, 240, 454 A.2d 359, 365 (1983); *Attorney Grievance Comm'n v. Engerman,* 289 Md. 330, 348, 424 A.2d 362, 371 (1981). The disciplinary rule violations here resulted from a difficult relationship with a single client that appears to be an isolated episode not likely to recur. Under the circumstances, we conclude that a public reprimand is the proper sanction to be imposed.

> *It is so ordered; Stancil shall pay all costs as taxed by the Clerk of this Court, including all costs of transcripts pursuant to Maryland Rule BV 15 c, for which sum judgment is entered in favor of the Attorney Grievance Commission against James Earl Stancil.*