635 A.2d 1315

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Howard Stuart MYERS.

Misc. Docket (Subtitle BV) No. 23, Sept. Term, 1992.

Court of Appeals of Maryland.

Jan. 25, 1994.

Melvin Hirshman, Bar Counsel, and Kendall R. Calhoun, Asst. Bar Counsel for the Atty. Grievance Com'n of Maryland, for petitioner.

Nevett Steele, Jr., Towson, and Howard Stuart Myers, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The respondent, Howard Stuart Myers, was charged, in a petition for disciplinary action, filed by Bar Counsel, on behalf of the Attorney Grievance Commission, with violating Rules

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

3.3(a)(1)[1] and Rule 8.4(c)[2] of the Rules of Professional Conduct. The rules were violated, the petition alleged, by a response the respondent gave to a question posed by the District Court judge concerning his traffic record. Specifically, it averred that in response to the question, "if he had ever gotten a ticket before?" the respondent "falsely stated, under oath, that he had not had a ticket since he was 19 years old."[3] The falsity of the statement was revealed when the District Court judge's review of the respondent's driving record via the computer terminal revealed "speeding violations of which respondent was found guilty on August 13, 1987, August 24, 1988 and June 7, 1990 with (1) current point."

A hearing was held on the petition at which the respondent testified. The court concluded, "by clear and convincing evidence that Mr. Myers' false and misleading testimony before Judge Wittstadt demonstrates a violation of Maryland Rules of Professional Conduct 3.3(a) and 8.4(c)." On the other hand, the court found "that since Mr. Myers did not know his driving record, and so testified, his responses to Judge Wittstadt were negligent or intentional misrepresentations and that the respondent knew he was being less than candid." The court also found that, despite the testimony of a forensic

---

1. *Rule 3.3 Candor Toward The Tribunal*
 (a) A lawyer shall not knowingly:
 (1) make a false statement of material fact or law to a tribunal;
 * * * * * *

2. *Rule 8.4 Misconduct*
 It is professional misconduct for a lawyer to:
 * * * * * *
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 * * * * * *

3. The transcript of the proceedings reveals that the following occurred after the trial judge found the respondent guilty of speeding:
 Judge Wittstadt: ... Tell me about your driving record.
 Mr. Myers: I have no points, your honor.
 Judge Wittstadt: Have you gotten a ticket before?
 Mr. Myers: Uh ... when I was 19.
 Judge Wittstadt: How long ago has that been?
 Mr. Myers: About 30 years ago.
 Judge Wittstadt: Thirty years ago?
 Mr. Myers: No, no, not 30 years ago, I'm sorry it's 21 years ago.

psychiatrist called by the respondent, the respondent's conduct was not caused by any adjustment disorder.[4]

On the first time this matter was before this Court, the respondent excepted to the hearing court's findings of fact, arguing that it had equivocated as to whether his representations were intentional or negligent. The respondent maintained that this, in and of itself, was proof positive that there was no clear and convincing evidence that his misrepresentations were, in fact, intentional. Rather than dismiss the charges, as the respondent urged we do, we remanded the case to the hearing court "for a factual determination of whether the statements, which [it] found were false and misleading, were negligently uttered or constituted intentional misrepresentations."

On remand, the hearing court conducted a further hearing. At that hearing, the respondent testified that he did not deliberately intend to deceive the trial judge when he misrepresented his driving record. The hearing court found this testimony to be at variance with the respondent's prior testimony admitting that he did not know what his record was before representing the number of points he had on his driver's record. In its "Supplemental Findings and Conclusions of Trial Court," therefore, the hearing court found, "based on clear and convincing evidence, that Mr. Myers did deliberately misrepresent his record to Judge Wittstadt in the District Court when he said to him that he had no points on his driving record."

## I.

The respondent has filed an exception. He maintains that there is a fatal variance between the charge that was actually brought by Bar Counsel and that which was authorized by the

---

4. Indeed, the respondent's expert testified that respondents' disorder "did not cause him to lie" and that she could not say that when responding to Judge Wittstadt, Myers did not know what he was saying.

Review Board.[5] The disciplinary petition, the respondent points out, alleged:

> 3. After the guilty finding Judge Wittstadt asked the Respondent about his driving record.
>
> 4. Respondent falsely stated, under oath, that he had no points.[6]

On the other hand, the respondent finds significant that the complaint made by Judge Wittstadt referenced, not a misrepresentation of the number of points the respondent had, but rather whether he had any traffic violations since he was 19 years old and that neither the Inquiry Panel nor the Review Board found that he misrepresented the number of points he had. The Inquiry Panel found "that the Respondent intentionally misrepresented his driving record to Judge Wittstadt ... while under oath." Because the Review Board adopted that finding, while making no other, and on that basis authorized the filing of charges, the respondent submits that he was improperly charged by Bar Counsel; he should not have been charged with falsely stating that he had no points, that conduct being "additional conduct which had not been the subject of recommendations by either the Inquiry Panel or Review Board." He urges dismissal of the petition.

## II.

 To be sure, as the petitioner recognizes, attorneys charged with misconduct must be afforded the "basic elements of due process—notice and the opportunity to defend in a full and fair hearing." *Att'y Griev. Comm'n v. Stewart,* 285 Md. 251, 259, 401 A.2d 1026, 1030 (1979), citing *Bar Ass'n of*

---

5. Maryland Rule BV9A requires the Bar Counsel, "acting at the direction of the Review Board," to file charges against an attorney. *See Att'y Griev. Comm'n v. Keister,* 327 Md. 56, 73, 607 A.2d 909, 917 (1992).

6. The petition also alleged:
 5. Judge Wittstadt then asked the Respondent if he had ever gotten a ticket before. Respondent falsely stated, under oath, that he had not had a ticket since he was 19 years old.

*Baltimore v. Posner*, 275 Md. 250, 255, 339 A.2d 657, 659–60, *cert. denied* 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975); *Maryland State Bar Ass'n v. Frank*, 272 Md. 528, 538, 325 A.2d 718, 723–24 (1974). "Of course, due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin." *Att'y Griev. Comm'n v. Goldsborough*, 330 Md. 342, 352, 624 A.2d 503, 508 (1993), citing *In re: Ruffalo*, 390 U.S. 544, 550–51, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). Rule BV9C reflects that concern. Its requirement that "[t]he charges ... be sufficiently clear and specific reasonably to inform the attorney proceeded against of any misconduct charged" is designed to insure that the attorney is afforded notice and the opportunity to defend him or herself against the charges. The notice to which the attorney is entitled is of the factual allegations against which the attorney must defend. *Att'y Griev. Comm'n v. McBurney*, 282 Md. 116, 123–24, 383 A.2d 58, 62–63 (1978). Thus, while "it is the 'complaint that an attorney has committed an act of misconduct,' *i.e.*, the operative facts alleged by the complainant as constituting the misconduct, that is referred to the Inquiry Panel," *Att'y Griev. Comm'n v. Keister*, 327 Md. 56, 68, 607 A.2d 909, 915 (1992), it is the factual allegation the Inquiry Panel finds reason to believe and as to which the Review Panel directs charges be filed, of which the attorney must be informed and against which he or she must defend. Once directed to do so, Bar Counsel frames the formal charges. He is not, however, required simply to parrot the Review Board. All that is required is that the charges filed reflect the factual basis for which authorization was given.

In this case, the charges brought by Bar Counsel focused on the respondent's driving record. So, too, did the letter from Judge Wittstadt and the findings of the Inquiry Panel, which the Review Board adopted. An intentionally false response to a question concerning whether a driver has points on his or her record is as much a misrepresentation of that driver's record as an intentionally false statement made in answer to a question concerning when the driver last received a traffic

ticket. Moreover, the Wittstadt letter enclosed a tape of the District Court proceedings. Thus, notwithstanding Judge Wittstadt's specific reference to the respondent's comments concerning when last he received a ticket, "the operative facts alleged . . . as constituting the misconduct" included both the letter and the tape of the proceedings. Consequently, Bar Counsel's letter to the respondent defining the scope of the Inquiry Panel's task appropriately focused on the respondent's driving record. And it was that general focus, not whether the respondent misrepresented the number of points he had, that both the Inquiry Panel and the Review Board maintained throughout their respective proceedings. In short, what was being inquired into was whether the respondent intentionally misrepresented his driving record. Falsely stating that he had no points was one way of making such a misrepresentation. While, as the respondent correctly observes, we have said that "Bar Counsel may file only such charges, supported by the facts found, as are 'directed' by the Review Board [but w]here . . . the Review Board does not direct, either expressly or implicitly, its filing, a respondent may challenge that charge at anytime," *Keister,* 327 Md. at 73, 607 A.2d at 917, in this case, there is no basis for a challenge.[7]

The respondent's exception is overruled. We now proceed to consider the appropriate sanction for the conduct which the hearing judge found to have been proven by clear and convincing evidence.

### III.

 It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Att'y Griev. Comm'n v. Goldsborough,* 330

---

7. The respondent does not allege that he was confounded in his attempt to defend against the charges or that he was somehow unable to mount an effective defense. Indeed, the record clearly reflects that there was no confusion or misunderstanding as to what the charges encompassed. Every party knew that the misrepresentations charged, whether they involved points or tickets, had to do with the respondent's driving record.

Md. at 364, 624 A.2d at 513; *Att'y Griev. Comm'n v. Proto-kowicz*, 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Att'y Griev. Comm'n v. Myers*, 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Att'y Griev. Comm'n v. Velasquez*, 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Att'y Griev. Comm'n v. Montgom-ery*, 296 Md. 113, 119, 460 A.2d 597, 600 (1983). We have recognized that the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Att'y Griev. Comm'n v. Kerpelman*, 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied*, 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). Moreover, such a sanction represents the fulfillment by this Court of its responsibility "to insist upon the maintenance of the integrity of the bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute." *Maryland St. Bar Ass'n v. Agnew*, 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules. *See Protokowicz*, 329 Md. at 262–63, 619 A.2d at 105; *Att'y Griev. Comm'n v. Owrutsky*, 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Att'y Griev. Comm'n v. Alison*, 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989). Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally de-pends upon the facts and circumstances of the case. *Att'y Griev. Comm'n v. Babbitt*, 300 Md. 637, 642, 479 A.2d 1372, 1375 (1984) (the facts and circumstances of a case will deter-mine how severe the sanction should be); *Montgomery*, 296 Md. at 120, 460 A.2d at 600; *Att'y Griev. Comm'n v. Pollack*, 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, consti-tute part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975). "In cases where the improper conduct of the lawyer involved misrepresentation, the severity of the sanction to be imposed for the misconduct depends upon the facts and cir-

cumstances of the particular case." *Att'y Griev. Comm'n v. Myers,* 302 Md. at 579, 490 A.2d at 235.

This is not the first time that the respondent has been disciplined by this Court. In 1985, he was suspended from the practice of law for a period of three years for conduct similar to that exhibited in the instant case. In that case, we observed:

> "Myers attempted to mislead an investigator [of the Attorney Grievance Commission] and the inquiry panel by producing a fabricated cover letter which purported to inform [his client] that the document required a witness. After observing that the will was signed and dated a full week before the alleged cover letter was sent, the panel and the court below concluded that Myers had artlessly lied."

*Id.* at 580, 490 A.2d at 235. Prior to that proceeding, the respondent had been reprimanded for incompetence.

Although not required to do so, the hearing court offered its opinion that, notwithstanding its findings of facts and conclusions of law with respect to the respondent's conduct in front of Judge Wittstadt, the respondent should be allowed to continue in the practice of law. Noting that we have indicated that disbarment should be exercised with extreme caution, *see Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 518, 307 A.2d 677, 681 (1973), and that mitigating circumstances may and should be considered in determining the appropriate punishment, *see Att'y Griev. Comm'n v. Pollack,* 289 Md. at 609, 425 A.2d at 1355, it urges that a sanction other than disbarment be imposed. In addition, the respondent notes that, at the time he appeared in court he was very upset and concerned about the health of his longtime companion. Moreover, aware that his prior grievance history ought to, and will, be taken into account, the respondent points out that lawyer misrepresentations have not always resulted in disbarment even when the attorney has previously been disciplined for misconduct.[8] Finally, the respondent asserts that he is genu-

---

8. A misrepresentation need not involve fraud or deceit. *See Att'y Griev. Comm'n v. Collins,* 295 Md. 532, 553, 457 A.2d 1134, 1144 (1983). It is

inely contrite for the misconduct and wishes to make amends. Like the hearing court, the respondent believes that a sanction other than disbarment is warranted.

 While disbarment ordinarily follows as a matter of course "when a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances," *Agnew*, 271 Md. at 553, 318 A.2d at 817, that is not the only time that sanction is employed. Viewed in light of the respondent's prior suspension and the nature of the conduct for which it was imposed, we believe the proper sanction for the intentional misrepresentation in this case is the ultimate one, disbarment. Candor and truthfulness are two of the most important moral character traits of a lawyer. *See Att'y Griev. Comm'n v. Levitt*, 286 Md. 231, 238, 406 A.2d 1296, 1299 (1979); *Fellner v. Bar Ass'n of Balt. City*, 213 Md. 243, 247, 131 A.2d 729, 732 (1957). The respondent has exhibited an absence of those traits on not one, but two, occasions, and previously has been suspended as a result of one of them. This instance of misrepresentation, in fact, comes after he has completed a three year suspension for the earlier misrepresentation, thus indicating that he has "apparently learned nothing" from that experience. *Att'y Griev. Comm'n v. Bailey*, 294 Md. 526, 527, 451 A.2d 1210, 1210 (1982). *See also Att'y Griev. Comm'n v. Sherman*, 297 Md. 318, 327–28, 465 A.2d 1161, 1166 (1983).

We are aware, of course, that sanctions short of disbarment have been imposed for misrepresentation, *i.e.*, reprimand, *see, e.g., Att'y Griev. Comm'n v. Stancil*, 296 Md. 325, 333, 463 A.2d 789, 792 (1983) (reprimand); *Att'y Griev. Comm'n v.*

---

in this circumstance that a sanction other than disbarment is justified and has been imposed. In *Collins*, we pointed out, however, citing *Att'y Griev. Comm'n v. Bailey*, 294 Md. 526, 536, 451 A.2d 1210, 1214 (1982) and *Maryland State Bar Ass'n v. Agnew*, 271 Md. 543, 553, 318 A.2d 811, 817 (1974), that when, in addition to the misrepresentation, a finding of fraud is made and is supported by the evidence, "disbarment would follow as a matter of course absent compelling extenuating circumstances." *Id.*, 295 Md. at 555, 457 A.2d at 1145.

*Heinze,* 293 Md. 193, 197, 442 A.2d 570, 572 (1982) (reprimand); *Att'y Griev. Comm'n v. O'Neill,* 285 Md. 52, 57, 400 A.2d 415, 418 (1979) (reprimand) or suspension, *see Att'y Griev. Comm'n v. Maxwell,* 307 Md. 600, 605, 516 A.2d 570, 572 (1986) (90 day suspension for deliberate falsification of a notary certificate, and knowing attestation of a false signature on a deed as genuine); *Att'y Griev. Comm'n v. Bailey,* 286 Md. 630, 637, 408 A.2d 1330, 1334 (1979) (3 year suspension with right to apply for reinstatement after 30 days); *Levitt, supra* (1 year suspension), even when the conduct is particularly self-serving, *Myers,* 302 Md. 571, 490 A.2d 231; *Att'y Griev. Comm'n v. Sherman,* 295 Md. 229, 454 A.2d 359 (1983) and even when the attorney has previously been disciplined for misconduct. *See Att'y Griev. Comm'n v. Urisko,* 314 Md. 170, 176, 550 A.2d 370, 373 (1988) (60 day suspension for, *inter alia,* misrepresentation and neglect; respondent had previously been privately reprimanded for neglect); *Att'y Griev. Comm'n v. Singleton,* 305. Md. 259, 268, 503 A.2d 714, 719 (1986) (indefinite suspension with right to apply for reinstatement after 45 days for misrepresentation and neglect, after prior private reprimand for 2 separate instances of neglect); *Myers, supra* (3 year suspension for misrepresentation after reprimand for incompetence); *Sherman, supra* (3 year suspension for misrepresentation after dismissal with warning in connection with allegations of neglect and incompetence). *See also Att'y Griev. Comm'n v. Pollack, supra.* While it is true that in each of the latter cases, the attorney was not disbarred, in none of them did the prior misconduct also involve misrepresentation.

The former cases are also distinguishable. In *Stancil,* for example, although the misrepresentation was made to a client, we noted that "the disciplinary rule violations here resulted from a difficult relationship with a single client that appears to be an isolated episode not likely to recur." 296 Md. at 333, 463 A.2d at 792. The misrepresentation in *Heinze* was made to forwarding counsel. The Court viewed it as "not as grievous" as that in *Att'y Griev. Comm'n v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434, 437 (1978) (30 day suspension for misrepre-

sentations made to client on at least three occasions concerning hearing dates which were never set on a petition which was never filed) and as not rising to the level of the misrepresentations in *Levitt* and *Bailey*. In both *Bailey* and *Levitt* the misrepresentation was made to the court. In *Bailey* the Court apparently treated it as part and parcel of the attorney's incompetence. *See* 286 Md. at 636–38, 408 A.2d at 1334. The Court held in *Levitt* that the "conduct [lying] in the apparent context in which it took place does not rise to that 'involving dishonesty, fraud, deceit, or misrepresentation,' but is confined to his having '[k]nowingly ma[d]e a false statement . . . of fact.'" 286 Md. at 234, 406 A.2d at 1300. In *O'Neill*, the attorney disciplined was a neophyte, who, on the day that the lies were told, admitted them and also exhibited extreme contrition for having lied. 285 Md. at 56–57, 400 A.2d at 417–418. And this case is not within that line of cases where the misrepresentation was not for personal gain. *See Maxwell*, 307 Md. at 603, 516 A.2d at 571; *Att'y Griev. Comm'n v. James*, 333 Md. 174, 184–185, 634 A.2d 48, 53 (1993) and cases cited therein.

Like the instant case, the misrepresentations made in both *Sherman* and the respondent's prior case were self-serving, for the purpose of concealing the attorney's misdeeds. Unlike this case, however, when those misrepresentations were made, there was no history of similar conduct.

The respondent is ordered disbarred.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST HOWARD STUART MYERS.*