## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND v. JEFFREY ALAN LEVITT

[Misc. Docket (Subtitle BV) No. 34, September Term, 1978.]

*Decided November 2, 1979.*

232

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*J. Martin McDonough, Jr., Assistant Bar· Counsel, for Attorney Grievance Commission.*

*J. Seymour Sureff* for Jeffréy Alan Levitt.

SMITH, J., delivered the opinion of the Court. ORTH, J., filed an opinion at page 240 *infra,* concurring in part and dissenting in part, in which MURPHY, C. J., joins.

We shall here suspend an attorney from the practice of law in this State because of his misrepresentations to a trial judge in connection with a case then pending.

Bar Counsel, acting on behalf of the Attorney Grievance Commission of Maryland, filed a petition with us charging that Jeffrey Alan Levitt, a member of the Maryland Bar since June 22, 1970, had violated Disciplinary Rules 1-102 (A) (1), (4), (5), and (6) and 7-102(A) (5).[1] Pursuant to Maryland Rule

---

1. We set forth the Disciplinary Rules to which reference has been made:

DR 1-102 Misconduct.

(A) A lawyer shall not:
    (1) Violate a Disciplinary Rule.
    (2) ...
    (3) ...
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
    (5) Engage in conduct that is prejudicial to the administration of justice.
    (6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his representation of a client, a lawyer shall not:
    * * *
    (5) Knowingly make a false statement of law or fact.

BV9 b the matter was transmitted to the Supreme Bench of Baltimore City to be heard by Judge Paul A. Dorf of the Eighth Judicial Circuit. After a full hearing Judge Dorf submitted to us a well reasoned report and opinion in which he concluded that Levitt had violated DR 1-102 (A) (1) and (4) and DR 7-102 (A) (5).

It will be noted that the disciplinary rules of which Judge Dorf found that Levitt had run afoul forbade violating a disciplinary rule; engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and a lawyer's knowingly making a false statement of law or fact in representing his client. Bar Counsel filed exceptions. He contended that in the light of these findings Judge Dorf also should have found that Levitt violated DR 1-102 (A) (5) relative to engaging in conduct that is prejudicial to the administration of justice and DR 1-102 (A) (6) concerning engaging in any other conduct that adversely reflects on his fitness to practice law. Since Judge Dorf made no finding that Levitt was not guilty of violating these last two rules, it appears to us that he viewed any infraction of these rules as subsumed in his findings concerning dishonesty, fraud, deceit, or misrepresentation and knowingly making a false statement of law or fact. We shall so treat the matter. Levitt's exceptions amount to a contention that there was no clear and convincing evidence of the violations.

The relevant facts may be briefly summarized. Levitt was president of and resident agent for Court Square Investments, Inc., (Court Square) which owned certain rental housing in Baltimore City. He testified that all of the stock in the corporation was owned by his two minor children and the minor child of a friend. At oral argument before us counsel for Levitt said that at the time with which we are here concerned Levitt's children were approximately eight and ten years of age and the friend's child was about the same age. An individual was injured on one of these properties. At about this same time a Baltimore newspaper published an account apparently unfavorable to owners of certain rental property, including Levitt and Court Square. Levitt determined to dispose of this property. The sale was consummated subsequent to this injury. Levitt and Court Square were sued

in the District Court of Maryland relative to this accident. In due season a judgment by default as to liability was entered against Court Square and Levitt with leave to extend. The order recited that the defendants had "failed to answer interrogatories in accordance with the [prior] Order of th[at] Court ... and ha[d] failed to show cause within the time allowed why th[at] Court should not impose sanction upon them for their failure to answer interrogatories ...." The judgment was extended. Levitt entered an order for appeal to the Baltimore City Court on behalf of both defendants. He placed on the order a request for a transcript. On that same day he entered a motion in the District Court "to have judgment stricken ... as defendants were not notified of new trial date." On the latter motion the District Court made an entry to the effect that the motion could not be entertained since an appeal was pending.

In the Baltimore City Court the plaintiff in the action against Levitt and Court Square filed a motion to dismiss the appeal. This plaintiff claimed that Levitt and Court Square had "failed to comply with [Maryland] Rule 1325 (a) in that [they] failed to transmit to the Appellate Trial Court the record within the time provided by the Rule" and no application had been made "for an extension of time within the period provided by the Rule." It was also alleged that they failed "to provide a copy of transcript of testimony to the Appellees as required by Rule 1326 (d) (2)." In due season this motion came before a judge of the Baltimore City Court. The seeds for this disciplinary proceeding were sown there. Bar Counsel alleged in his petition for disciplinary action that at this hearing Levitt "denied either actual or beneficial ownership" of the property in question in his own name or in the name of Court Square; "denied receiving notice, and/or knowledge of the suit, or of the pleadings at issue in the case ...;" "denied receipt of any interrogatories" filed in that case in the District Court; "denied notice that any interrogatories had been filed in that case," and "denied any notice of the hearing date" at which judgment was extended. Judge Dorf in his memorandum said:

After reviewing lengthy testimony and a plethora

of exhibits, this Court construes the issues as follows:

A. Did Respondent make representations before Judge Kaplan pertaining to his knowledge and/or notice of the suit or the pleadings, particularly notice of the March 16, 1976, hearing date, which he knew or should have known were not true?

B. Did Respondent make representations before Judge Kaplan concerning his interest in the particular property and in Court Square Investments, Inc., which he knew or should have known were not true?

The Baltimore City Court judge and counsel for the plaintiff in the District Court proceeding each testified before Judge Dorf. They each stated that Levitt said at the hearing on the motion that he had no knowledge of the District Court proceeding prior to notice of the ultimate judgment. Before Judge Dorf Levitt repeated his assertion that his first knowledge of the case was the day he received notice of the final judgment. Judge Dorf observed, "If this were the extent of testimony, there would be no clear and convincing evidence of misrepresentation before Judge Kaplan as to this issue," referring to issue A framed by him.

The assertions by Levitt were in the face of two return receipts signed with his name by an admitted secretary in his office (apparently one was a notice to him individually and one was as resident agent for Court Square) reflecting service of process under Maryland District Rule 104 b 2; a letter on his stationery as an attorney to the District Court requesting a postponement in the case, which letter is signed by him per the secretary to whom it was dictated; various letters addressed to the District Court by opposing counsel with copy shown to him; interrogatories filed in the District Court reflecting that a copy was mailed to him, and a motion for sanctions for failure to answer interrogatories with copy shown as mailed to him.

Certain portions of the transcript of the hearing before the inquiry panel were read into the record before Judge Dorf.

Levitt's testimony there was diametrically opposed to his statement as to knowledge in the Baltimore City Court matter and to the evidence he gave before Judge Dorf. From it one could learn that Levitt had substantial knowledge of the case prior to the notice of judgment. A few of the examples quoted by Judge Dorf in his opinion will suffice:

Question (by Mr. McDonough [, Assistant Bar Counsel]): Mr. Levitt, you did send the letter to the District Court October the 8th, 1975, asking for a postponement?

Answer: Right. We got a card and I postponed it. Because I wanted — I let the insurance company . . . I called Elsnic up, I said, "There's a case against me, what do you want me to do?" They said they will get in touch with the insurance company, or the girl said it.

\* \* \*

THE WITNESS: . . . I just postponed the case so I could give the insurance — Elsnic a chance to do whatever — When they didn't do it I was prepared to go down there on this March 16th and say Levitt doesn't own the property and bring up the facts, you know, whatever facts were necessary.

\* \* \*

MR. BARADEL [, a member of the inquiry panel]: Prior to the time that you were in Judge Kaplan's chambers, prior to the time you heard about the default judgment, you, in fact, knew about the litigation didn't you?

THE WITNESS: Yes. We're not denying that I knew it.

MR. BARADEL: Thirty seconds ago you said to me you didn't know whether you knew about it.

THE WITNESS: I knew that this case [was] in existence. I never said I didn't know it.

\* \* \*

MR. KAUFMAN [, chairman of the inquiry panel]: . . . You did write a letter dated October 8, 1975 on

your new stationery from 416 North Charles Street to the District Court requesting a postponement?

THE WITNESS: That's correct. My secretary did.

MR. KAUFMAN: And referring to the case as Gail Ferron vs. Jeffrey Levitt?

THE WITNESS: Yes. Yes. I'm not denying that. I didn't deny it in front of Judge Kaplan. I said, "Yes, we knew about it. I got a card telling me a date."

Yet, presumably with full knowledge of this prior testimony before the inquiry panel, the record reflects that Levitt testified as follows before Judge Dorf:

BY MR. McDONOUGH:

Q   Is it your testimony when — your testimony today, and I'm not clear on this, when was the first time you learned of this suit?

A   The first time I remember learning of this suit was when I got the card, is what I'm telling you, when I got that card.

Q   Which card?

A   That said I had a $2,125. judgment against me.

On the second issue as framed by Judge Dorf there was clear and convincing evidence to support his conclusion that Levitt made statements in Judge Kaplan's presence concerning his interest in the particular property and in Court Square Investments, Inc., which he knew or should have known were not true.

When there is in the record, as here, from the lips of the attorney involved a recorded admission of facts directly contrary to his contentions before the Baltimore City Court judge and, indeed, before the judge assigned to hear this disciplinary matter, it is frivolous, to put it mildly, to say that there was not clear and convincing evidence of his violation of the Disciplinary Rules.

Attorneys at law are officers of the court, and have been so regarded for generations. *See generally* 7 Am.Jur.2d *Attorneys at Law* § 2 (1963) and 7 C.J.S. *Attorney and Client* § 1 (1937). 2 J. Poe, *Pleading and Practice* § 4 at 15 (5th ed.

Tiffany 1925) refers to an attorney as having been "by the solemn judicial act of the court clothed with his office . . . ." Courts have a right to expect their officers to be truthful in their statements to the court. The lack of candor demonstrated here is unbefitting a lawyer and it also undermines our system of justice.

In *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 403 A.2d 1241 (1979), we commented:

> Many times in recent years this Court has quoted from *Ex Parte Brounsall,* 2 Cowp. 829 (1778), what has come to be known as "the Lord Mansfield rule." It is to the effect that in disciplinary proceedings the inquiry is to whether after the conduct of such individual it is proper that he should continue to be a member of a profession which should stand free from all suspicion, such proceedings not being by way of punishment, but the court in such cases exercises its discretion whether a man whom they have formerly admitted to practice is a proper person to be continued on the roll or not. By the same token, suspension is for the protection of the public, not by way of punishment of the individual lawyer. It is protection for the public because it demonstrates to members of the legal profession the type of conduct which a court will not tolerate without sanction. [*Id.* at 596-97.]

This Court has observed that no moral character qualification for bar membership is more important than truthfulness and candor. *See, e.g., In Re Application of Allan S.,* 282 Md. 683, 689, 387 A.2d 271 (1978); *Fellner v. Bar Ass'n,* 213 Md. 243, 247, 131 A.2d 729 (1957); and *In Re Meyerson,* 190 Md. 671, 687, 59 A.2d 489 (1948).

We are fully cognizant of the fact that, as pointed out by the dissent in the instant case, in *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 553, 318 A.2d 811 (1974), this Court said, "[W]hen a member of the bar is shown to be willfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling

extenuating circumstances, ... disbarment followed as a matter of course." We are of the view that the conduct here does not rise to the level of that before the Court in *Agnew* who, as Judge Digges noted for the Court, "st[ood] convicted of a willful attempt to evade the payment of income taxes due by him to the United States," a crime which the Court noted "involves moral turpitude, and is infested with fraud, deceit, and dishonesty ...." *Id.* at 551.

To put this case in proper perspective we point out that the matter before the Baltimore City Court judge did not in the slightest degree concern whether Levitt or his corporation had or had not been properly served in the proceeding or whether he had knowledge of that proceeding prior to his receipt of notice of the judgment. The judge was concerned solely with a motion on the part of the appellee to dismiss the appeal because of Levitt's alleged failure to comply with the rules as to an appeal from the District Court to the Baltimore City Court. This motion was considered informally in chambers. It appears that in some way at that conference the extraneous matter of the allegedly improper service of process and the like was brought out. We do not for one minute condone Levitt's conduct on this occasion. There is clear and convincing evidence that Levitt lied to Judge Kaplan, which behavior requires imposition of a sanction. We believe, however, that his conduct in the apparent context in which it took place does not rise to that "involving dishonesty, fraud, deceit, or misrepresentation," but is confined to his having "[k]nowingly ma[d]e a false statement of ... fact."

We point out that no transcript is available relative to the proceeding before the Baltimore City Court judge.[2] Thus, we do not know precisely the context in which Levitt's statements were made. We further point out that the petition for disciplinary action now before us does not charge perjury before Judge Dorf.

---

2. We suggest that a trial judge in a similar circumstance if there is the slightest thought of bringing charges against an attorney would be wise to send for a court stenographer and have the matter placed on the record. In fact, the wiser course might be to have hearings on such motions in the formality of a courtroom with a stenographer present.

It is extremely difficult in a case such as this to determine the proper sanction. However, considering *Agnew* and taking into account all of the factors which we have heretofore set forth, we believe that the proper sanction here is that Jeffrey Alan Levitt shall stand suspended from the practice of law in this State for the period of one year beginning 30 days from the date this opinion is filed. He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

> *It is so ordered; respondent shall pay all costs, including all costs of transcripts, pursuant to Maryland Rule BV15 c, for which sum judgment is entered in favor of the Attorney Grievance Commission against Jeffrey Alan Levitt.*

*Orth, J., concurring in part and dissenting in part:*

An action was filed in the District Court of Maryland against Jeffrey Alan Levitt, an attorney at law, licensed to practice in this State, and Court Square Investments, Inc., whereby damages were sought for personal injuries received by a person on the premises 3217 Woodland Avenue, Baltimore City, allegedly owned by Levitt and Court Square. Levitt's appearance was entered for the defendants. Judgment by default was granted as to liability and that judgment was extended upon damages being proved at a hearing on 16 March 1976. An appeal was duly filed by Levitt in the Baltimore City Court.

The plaintiffs filed a motion to dismiss the appeal on grounds that the record in the case had not been timely transmitted and that a copy of the transcript of testimony had not been provided to them. At a hearing on this motion before Judge Joseph H. H. Kaplan, it is plain that Levitt lied. This led to disciplinary action by the Attorney Grievance Commission of Maryland and a plenary hearing before Judge Paul A. Dorf, in accordance with chapter 1100, subtitle BV, of the Maryland Rules of Procedure. The hearing judge found

from clear and convincing evidence that Levitt had made to Judge Kaplan representations pertaining to his knowledge of the suit, and particularly notice to him of the March 16, 1976 hearing date, and "concerning his interest in the particular property and in Court Square Investments, Inc.," which were not true. It was manifest that Levitt misrepresented to Judge Kaplan what had taken place in the District Court case. Then before the inquiry panel he told, under oath, an entirely different story, one which appears consistent with the record. However, at the hearing of this grievance before Judge Dorf, he again told, under oath, a story consistent with what he had said to Judge Kaplan but totally inconsistent with what he had said before the inquiry panel.

On his findings of fact that Levitt had falsely denied to Judge Kaplan that he had notice or knowledge of the suit and had any interest in the property involved, Judge Dorf concluded as a matter of law that Levitt had violated three disciplinary rules of the Code of Professional Responsibility, Rule 1230, Appendix F, Maryland Rules of Procedure, namely, that a lawyer shall not violate a disciplinary rule, DR 1-102 (A) (1), shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, DR 1-102 (A) (4) and, in his representation of a client, shall not knowingly make a false statement of law or fact, DR 7-102 (A) (5).

The majority apparently accept Judge Dorf's findings of fact and conclusions of law. They declare, and I wholeheartedly agree, that "[w]hen there is in the record, as here, from the lips of the attorney involved, a recorded admission of facts directly contrary to his contentions before the Baltimore City Court judge [Judge Kaplan] and, indeed, before the judge assigned to hear the disciplinary matter, it is frivolous, to put it mildly, to say that there has not been clear and convincing evidence of his violation of the Disciplinary Rules."

The majority then put Levitt's prevarications in what I think is· the correct perspective by observations to which I wholeheartedly subscribe. They note that attorneys at law are officers of the court. They state that "[c]ourts have a right to expect their officers to be truthful in their statements

to the court." They declare that "[t]he lack of candor demonstrated here is unbefitting a lawyer and it also undermines our system of justice." They expressly affirm an observation often made by this Court: "[N]o moral character qualification for bar membership is more important than truthfulness and candor."

At this point I depart from the majority. Although they assert without equivocation that "[t]here is clear and convincing evidence that Levitt lied to Judge Kaplan," they express a belief that Levitt's "conduct in the context in which it took place does not rise to that 'involving dishonesty, fraud, deceit, or misrepresentation,' but is confined to his having '[k]nowingly ma[d]e a false statement of . . . fact.' " In the face of the clear and convincing evidence that Levitt lied to the court, and despite their stated position concerning the necessity for truthfulness and candor in an attorney's relationship with a court, they minimize the lies here, downgrading them to the status of knowingly making a misstatement of fact so that they do not amount to dishonesty, fraud, deceit or misrepresentation. This I cannot accept.

The majority attempt to justify their view by pointing out

> that the matter before [Judge Kaplan] did not in the slightest degree concern whether Levitt or his corporation had or had not been properly served in the proceeding or whether he had knowledge of that proceeding prior to his receipt of notice of the judgment. The judge was concerned solely with a motion on the part of the appellee to dismiss the appeal because of Levitt's alleged failure to comply with the rules as to an appeal from the District Court to the Baltimore City Court. This motion was considered informally in chambers. It appears that in some way at that conference the extraneous matter of the allegedly improper service of process and the like was brought out.

Although the majority deny any condonation of Levitt's conduct, they take, what I deem to be a weak stand regarding that conduct. I am not at all willing to consider the lies here

as no more than misstatements of fact and assume that they played no part in the consideration of the court on the motion to dismiss. Levitt was attempting to reverse a judgment entered against him. It is true that we do not know precisely how the subject of notice of the hearing to assess damages and of the ownership of the property came up, there being no transcript of the proceedings in chambers. But I think that it is inescapable that Levitt brought the matter up to advance his cause. Certainly, Judge Kaplan did not deem Levitt's conduct extraneous or unimportant or insignificant or irrelevant or immaterial, because after denying the motion to dismiss the appeal, the judge immediately took steps to set the matter concerning Levitt's interest in the property for a hearing under oath before another judge. That hearing did not materialize only because Levitt paid the judgment.

The majority claim to be "fully cognizant of the fact" that

> this Court has consistently adhered to the view, both prior to 1970 (when we reviewed disciplinary actions only on appeal at the instance of the respondent-attorney), *Balliet v. Balto. Co. Bar Ass'n,* [259 Md. 474, 270 A.2d 465 (1970)]; *Fellner v. Bar Ass'n,* [213 Md. 243, 131 A.2d 729 (1957)]; *In the Matter of Lombard,* 242 Md. 202, 218 A.2d 208 (1966); *In Re Williams,* 180 Md. 689, 23 A.2d 7 (1941); and since that date (when we assumed original and complete jurisdiction over these proceedings), *Bar Ass'n v. Marshall,* [269 Md. 510, 307 A.2d 677 (1973)]; *Bar Ass'n v. Cockrell,* 270 Md. 686, 313 A.2d 816 (1974); *Maryland St. Bar Ass'n v. Callanan,* 271 Md. 554, 318 A.2d 809 (1974), that when a member of the bar is shown to be wilfully dishonest for personal gain by means of fraud, deceit, cheating or like conduct, absent the most compelling extenuating circumstances, . . . disbarment followed as a matter of course. [*Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 553, 318 A.2d 811 (1974).]

No compelling extenuating circumstances were shown here. Indeed, it appears that Levitt was wilfully dishonest, seeking

personal gain by means of fraud, deceit or misrepresentation. I see no sound basis for this Court to reject Judge Dorf's conclusion that Levitt violated DR 1-102 (A) (4). Levitt has amply demonstrated by his conduct that his word is not to be trusted, that he is not fit to be an officer of the court, and that he is unworthy of continued membership in the Maryland Bar. Suspension is not the proper sanction in the circumstances. He should be disbarred.

Chief Judge Murphy joins in this opinion.