THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHIRLEY BUCKLEY, Defendant-Appellant.

Second District   No. 2—86—0081

Opinion filed August 12, 1987.—Supplemental opinion filed April 15, 1988.

Robinson & Skelnik, of Elgin (Mary Robinson, of counsel), for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, John X. Breslin, and Judith Z. Kelly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Shirley Buckley, was found guilty by a jury in the circuit court of Lake County of robbery, armed robbery, armed violence, and unlawful use of weapons. (Ill. Rev. Stat. 1985, ch. 38, pars. 18—1, 18—2, 33A—2, 24—1(a)(4).) She received concurrent sentences of 15 years' imprisonment each for armed violence and armed robbery and five years for unlawful use of weapons.

She contends (1) the court erred in denying her a hearing upon her allegation that the prosecutor used peremptory challenges to exclude blacks from her jury; (2) the court's refusal to enforce its order directing Mitchell McGee to appear so that he could be called as a defense witness denied her her right to compulsory process and a fair trial; and (3) the judgment of conviction for robbery and the judg-

ments and sentences for armed robbery and unlawful use of weapons must be vacated because they were based on the same act as the armed violence conviction and sentence.

Because we find the cause must be remanded for further proceedings in the trial court on the basis of the first issue raised by the defendant, we do not address her second and third issues as those may be obviated after the remand.

■ At the conclusion of the *voir dire*, the defendant moved for a discharge of the venire asserting that the assistant State's Attorney had used his peremptory challenges for the purpose of excluding blacks from her jury. Noting that there were four black people in the venire and that the State used three out of six peremptory challenges to exclude three of those four black veniremen, defense counsel objected to what he considered to be the State's systematic exclusion of black jurors.

The assistant State's Attorney stated that he "basically [had] no response," asserting that the defendant must show the exclusions were done systematically. Further, he noted that a black person had been impanelled on the jury and that the State has the right to exercise its peremptory challenges as it sees fit based upon biographical information contained in the jurors' profiles as well as questions and answers.

The trial judge agreed there must be a systematic excusing of a particular race based on more than what has occurred in a single jury selection. He further stated he felt the exclusions could not be considered systematic in view of the fact one of the black veniremen was selected for the jury.

Defense counsel opined that the reason the fourth black venireman was impanelled was perhaps attributable to the fact the venireman had a relative who was an assistant State's Attorney. As to the three jurors who were peremptorily excused, the defense counsel stated he felt there was nothing about them or their backgrounds which would cause the exercise of a peremptory challenge to excuse them.

The trial judge again stated he could not see that there was a systematic exclusion "where there's at least one here." The judge speculated further that even if all four of the black veniremen had been excused, there could be a good reason behind the assistant State's Attorney's challenges. In any case, the court observed that it was not "entitled to look behind [the peremptory challenge] for the reasons unless there is a systematic exclusion, and [that] takes more than one case."

The court denied defendant's motion to discharge the venire and to request the assistant State's Attorney to state the reason for excusing the three black veniremen. Subsequently, the court also denied defendant's post-trial motion which included this issue.

It is clear the basis for the court's denial of the defendant's motions was the suggestion in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, which has been adhered to in Illinois (see, *e.g., People v. Payne* (1983), 99 Ill. 2d 135, *cert. denied* (1984), 469 U.S. 1028, 83 L. Ed. 2d 372, 105 S. Ct. 447; *People v. Williams* (1983), 97 Ill. 2d 252, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364), that only a showing of the systematic exclusion of blacks by peremptory challenges in case after case regardless of the particular circumstances involved would raise a constitutional issue.

However, in April 1986, the United States Supreme Court overruled *Swain* in part in its decision in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Under *Batson*, a defendant may establish a *prima facie* case of purposeful discrimination solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial, rather than on a case-after-case basis. In order to establish such a case, the defendant first must show that he or she is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant may then rely on the fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.]" (*Batson v. Kentucky* (1986), 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1723.) The defendant must then show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen on account of their race. By this combination of factors, the defendant may raise the necessary inference of purposeful discrimination.

In deciding whether the required showing has been made, the trial court may consider, for example, whether there has been a "pattern" of strikes and whether the prosecutor's questions and statements during *voir dire* and in exercising challenges either support or refute an inference of discriminatory purpose. If the court determines the inference has been raised, the burden shifts to the State to come forward with a neutral explanation for challenging the veniremen, which explanation "need not rise to the level justifying exercise of a challenge for cause." *Batson v. Kentucky* (1986), 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.

The State acknowledges that *Batson* is applicable to the instant cause by virtue of *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, wherein the Supreme Court determined that *Batson* would be retroactively applied to all cases pending on direct review.

Defendant argues that the record reveals she made the requisite *prima facie* showing of racial discrimination under *Batson*, and she urges that the cause be remanded for the purpose of requiring the prosecutor to explain his motives for challenging the black veniremen. The State, on the other hand, argues the defendant failed to establish a *prima facie* case of racial discrimination. It asserts that although she established that she was black and that the prosecutor used peremptory challenges to remove black veniremen, she failed to show that these facts and any other relevant circumstances raised an inference that the prosecutor used the selection practice to exclude jurors because of their race. The State urges we find the defendant thus failed to establish a *prima facie* case of purposeful discrimination and, therefore, is not entitled to a remand for a hearing on that issue. In support, the State cites our *People v. Lester* (1986), 145 Ill. App. 3d 720, and *People v. Peters* (1986), 144 Ill. App. 3d 310, as examples of cases wherein the defendant failed to establish a *prima facie* case of purposeful discrimination.

We find *Lester* and *Peters* distinguished from the instant cause. In *Lester*, the defendant was convicted of the murder of the four-year-old son of the woman with whom he lived. We observed in *dicta* there that *if* the defendant had not waived the issue by failing to raise it in his post-trial motion, and *if Batson* were to be given retroactive application, which it subsequently was, the record failed to show the defendant established a *prima facie* case of purposeful discrimination where the prosecutor articulated a neutral explanation for excluding the black veniremen.

Similarly, in *Peters* the defendant failed to identify the first two blacks who were excused, but the trial court specifically noted that the State's exclusion of them was legitimate based on their responses. As to the third black excused, the court commented that it found nothing objectionable in his responses and asked the State to articulate its reasons for excluding him. When the State articulated a neutral explanation, the court determined that factors other than the venireman's race were the basis for the exclusion and that it would be permitted.

In contrast here, the prosecutor declined to offer any explanation whatever for his exclusion of the three black veniremen, and the court

denied defendant's motion to request that the prosecutor do so because there was no evidence of a systematic, case-by-case exclusion of blacks by the prosecutor.

We note that some appellate cases decided after *Batson* was made retroactive in *Griffith* have remanded the cause either for a hearing on their present record and any additional record the parties would wish to make for the purpose of determining whether the prosecutor purposefully discriminated (*People v. Johnson* (1986), 148 Ill. App. 3d 163; *People v. Kindelan* (1986), 150 Ill. App. 3d 818) or, after determining that the record then before the court revealed *prima facie* purposeful discrimination in the exclusion of black jurors, remanded the cause for the purpose of having the prosecutor come forward with a neutral explanation for the exclusion of the jurors in question (*People v. Sims* (1987), 154 Ill. App. 3d 528; *People v. Seals* (1987), 153 Ill. App. 3d 417; *People v. Cannon* (1987), 153 Ill. App. 3d 245).

We note, however, that on May 1, 1987, the Illinois Supreme Court entered *sua sponte* and pursuant to its supervisory authority a virtually identical order in 10 cases then pending before it each of which included a claim of unconstitutional discrimination in the exercise of peremptory challenges, to wit:

"Pursuant to this court's supervisory authority and on the court's own motion, this court retains jurisdiction of this cause and directs the circuit court of [_____] County to conduct an expedited hearing to permit the defendant to present evidence to substantiate his claim of unconstitutional discrimination in the exercise of peremptory challenges. If the court finds that a *prima facie* showing of such discrimination has been made, the court is directed to determine whether or not there is a neutral explanation by the State for the exercise ·of the questioned peremptory challenges. The circuit court is directed to conduct this hearing in accordance with *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, as applied to cases on direct appeal by *Griffith v. Kentucky* [(1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708]. The court shall make appropriate findings of fact and conclusions of law and file those findings and conclusions with the clerk of this court within 63 days of this order, together with the record of the proceedings." *People v. Hooper*, Docket No. 55660; *People v. Hope*, Docket No. 58037; *People v. Young*, Docket No. 60190; *People v. Evans*, Docket No. 60705; *People v. Harris*, Docket No. 60857; *People v. McDonald*, Docket Nos. 63204, 63240 cons. (Ryan, Ward, and Moran, JJ., specially concurring and

Clark, C.J., and Simon, J., dissenting in each of the foregoing); *People v. Mack*, Docket No. 55370 (Ryan, Ward, and Moran, JJ., specially concurring; Clark, C.J., taking no part; and Simon, J., dissenting); *People v. Amos*, Docket No. 63043; *People v. Taylor*, Docket No. 64075, and *People v. Cannon*, Docket No. 64698.

In his special concurrence, in which Justices Ward and Moran joined, Justice Ryan explains:

"At the trial of the cases which we now consider, the issue of the misuse of the peremptory challenges to exclude blacks was considered under the law as announced in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. Under that law, of course, the burden the defendant had to meet to establish a *prima facie* case of discriminatory exclusion of blacks was much different, and much more difficult for the defendant to meet, than it is under *Batson*. I believe it would be manifestly unfair to a defendant if this court were to make a determination from a record made under *Swain* law whether or not a *prima facie* case has been established under *Batson*. The focus and the burden of the defendant's proof and the elements to be proved are different now than they were under *Swain*. If the defendant can present evidence of the discriminatory use of peremptory challenges under *Batson* law which was not disclosed by the record made under *Swain* guidelines, he should have an opportunity to present such evidence for the trial court's consideration. As [Chief Justice Clark] suggests in his dissent, it may well be that on remand the trial court will have to decide the *prima facie* question from a cold record, as this court could do now. But that will not necessarily be true in all cases. We should not preclude the defendant from making such an additional showing by deciding now in this court whether or not a *prima facie* case of discriminatory use of peremptory challenges has been made."

■ In the present cause, it is clear the issue of the misuse of peremptory challenges to exclude blacks also was considered under the law as announced in *Swain*. We believe the defendant is now entitled to remand of this cause in order to have an opportunity to present evidence of the discriminatory use of peremptory challenges under the current law as announced in *Batson*. Likewise, the trial court will then have the opportunity to apply the correct standard in ruling on the issue. As in *Batson*, we are confident that the trial judge, experienced in supervising *voir dire*, and with the guidance of the *Batson*

decision, "will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a *prima facie* case of discrimination against black jurors." (*Batson v. Kentucky* (1986), 476 U.S. 79, 97, 90 L. Ed. 2d 69, 88, 106 S. Ct. 1712, 1723.) Inasmuch as the trial court here made particular note of the fact that at least one black juror had been impanelled, we point out that *Batson* does not require complete exclusion of a racial group in order to prove discrimination. *People v. Seals* (1987), 153 Ill. App. 3d 417, 423.

Accordingly, this cause is remanded to the circuit court of Lake County for a hearing to be conducted in accordance with *Batson v. Kentucky* at which defendant will be permitted to present evidence to substantiate her claim of unconstitutional discrimination in the exercise of peremptory challenges when the jury was chosen. If the trial court finds that a *prima facie* showing of such discrimination has been made, it will then determine whether or not there is a neutral explanation by the State for its exercise of the questioned challenges. The trial court shall make findings of fact and conclusions of law which, together with the record of proceedings, shall be filed with the clerk of this court within 63 days of the filing of this opinion. This court retains jurisdiction for the purpose of reviewing the determination of the trial court, and the defendant and State will be allowed to submit supplemental briefs addressing the issue in this court.

Cause remanded with directions.

REINHARD and WOODWARD, JJ., concur.

### SUPPLEMENTAL OPINION UPON REMAND

JUSTICE UNVERZAGT delivered the opinion of the court:

■ On remand, the circuit court of Lake County held the hearing mandated by our opinion. The supplemental record and briefs of the defendant and the State, addressing the *Batson* issue, have been filed in this court, and we have had the benefit of the parties' oral argument.

The original trial judge had retired from judicial service. The evidentiary hearing was conducted before another circuit judge of Lake County who had prepared himself for the hearing by reading the report of proceedings of the jury selection process in the case at hand.

At the conclusion of the hearing the trial judge initially found that the defendant is a black female and is a member of a cognizable racial group; that one black venireman, Torrie Newsome, was not challenged

and sat on the case; that three other prospective black veniremen were challenged peremptorily and that a *prima facie* case of racial discrimination had been established. He further found that the State failed to prove that the three peremptory challenges used by the prosecution to excuse black veniremen were exercised for racially neutral reasons.

The only witness presented at the hearing was Assistant State's Attorney Jack Bartels, who was the prosecuting attorney who selected the jury for the State. He testified that the case involved the late-night armed robbery of a gas station which resulted in the victims being threatened with firearms. In such a case, attorney Bartels wanted to have a jury composed of people from the area who are married, have children, and who are employed with "a position of authority, supervisor or some type of job of responsibility." He would have liked to have jurors who had prior jury service or had been the victim of an armed robbery, of an assault, or anything of that nature.

As to the dismissal of the black veniremen, witness Bartels stated: "Mr. Gardner was dismissed because, for the reason, at that time, is that he was unemployed." Bartels believed that the venireman had a history of unemployment.

Witness Bartels stated that he peremptorily challenged another black venireman, Cheryl Johnson, because she was a social worker supervisor for the State of Illinois.

He stated that he challenged black venireman Patricia Hall because he did not believe he could convince her beyond a reasonable doubt of defendant's guilt of armed robbery. He surmised that this venireman had no prior jury experience, had never been the victim of a crime, and her occupation (a cook) was such that "I didn't feel that it was a type of worldly occupation where someone would be exposed to a large variety of things." He also recalled that Hall was bitter about a divorce.

Witness Bartels testified he made some notes during *voir dire* for purposes of keeping track of which veniremen were seated where, for purposes of noting the pronunciation of the veniremen's names, and for purposes of noting questions which Bartels had for the veniremen and which the judge did not ask. Bartels acknowledged that the notes included no entries other than names for the three black veniremen. Bartels acknowledged that his notes revealed that he had intended to ask one of the white veniremen follow-up questions about what his job as an insurance auditor entailed, and that there were other notes of follow-up questions about employment for other white veniremen. Bartels testified that he asked no questions about employment, family,

or other background of the three black veniremen at issue because he had made up his mind to strike them before his turn for questioning them arose.

Bartels was the sole witness called, and the evidence consisted of his direct and cross-examination. At the conclusion of this and after hearing arguments, the trial court ruled that the State had failed to carry its burden of proving that the three black veniremen had been excused for racially neutral reasons.

The defendant contends first the State has no right to challenge in this court the findings made by the circuit court because the findings were made upon a limited remand ordered by this court while the case was pending upon the defendant's direct appeal. The defendant argues it would be appropriate for this court to implement the factual determination of the trial judge by summarily reversing and remanding for a new trial. We disagree with the defendant. A similar procedure has been followed in other cases. *People v. Petrovic* (1986), 146 Ill. App. 3d 857; *People v. Allen* (1988), 168 Ill. App. 3d 397.

In this case the trial judge found that the State failed to sustain its burden of showing that Patricia Hall, Cheryl Johnson, and Otis Gardner were excused for racially neutral reasons. In so finding, the court considered the fact that the prosecutor asked no questions of those three veniremen and made no notes concerning them during the *voir dire* process.

The defendant argues that under the case law implementing the *Batson* rule, the trial judge's findings in the instant case that the record demonstrated a *prima facie* case of discrimination and that the State failed to sustain its burden of showing racially neutral reasons for excusing three black jurors were well within the judge's discretion and mandated by the law. The defendant argues this requires a reversal of her convictions and a remand for a new trial.

The People argue neutral explanations for the excusal of each of the black veniremen were shown by Bartel's testimony and sum-up by indicating they feel the trial judge was wrong in characterizing these as race-engendered reasons as opposed to neutral.

The People point out no legal error in the trial judge's analysis, and the issue is simply one of fact to be determined by the finder of fact. *Batson v. Kentucky* (1986), 476 U.S. 79, 98 n.21, 90 L. Ed. 2d 69, 89 n.21, 106 S. Ct. 1712, 1724 n.21.

■ The Supreme Court in *Batson* set forth a three-stage process by which a defendant can seek to establish a *prima facie* case of purposeful discrimination in jury selection and thus require the State to come forward with a neutral explanation. First, defendant must show

that he is a member of a cognizable racial group and that the prosecutor removed a member of defendant's race from the panel by peremptory challenge; second, defendant may rely on the fact that a peremptory challenge permits discrimination by those of a mind to do so; and, finally, the defendant must show that these facts, and any other relevant circumstances, raise an inference that a venireman was excluded on account of his race. (*Batson*, 476 U.S. at 95-96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1722.) In deciding whether the defendant has made the requisite showing, the trial court should consider relevant circumstances, such as a pattern of strikes against a racial group and the prosecutor's statements or questions during *voir dire* which may either support or refute an inference of discriminatory purpose. *Batson*, 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.

■ *Batson v. Kentucky* requires that there be a neutral explanation for peremptory exclusion of members of a defendant's race from the jury, and under the facts here we conclude that the standard was not met. The trial judge made certain findings, and, on the basis of the record before us, we cannot conclude that he was in error. Therefore, the judgment of conviction and sentence will be vacated and the cause remanded for a new trial.

Remanded.

REINHARD and WOODWARD, JJ., concur.