562 A.2d 1278

Isaac GRAY

v.

**STATE of Maryland.**

**No. 77, Sept. Term, 1988.**

Court of Appeals of Maryland.

Sept. 8, 1989.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), of Baltimore, for petitioner.

Dennis M. Sweeney, Deputy Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Jillyn K. Schulze, Asst. Atty. Gen., on brief), Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the

**252**

Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

This case involves the proper procedure to be followed when there is a claim of racial discrimination by the exercise of peremptory challenges. *Batson v. Kentucky*, 476 U.S. 79, 93–96, 106 S.Ct. 1712, 1721–24, 90 L.Ed.2d 69 (1986), held that where the totality of circumstances surrounding a prosecutor's exercise of peremptory challenges established a prima facie case of racial discrimination, the burden was cast upon the State to explain adequately the racial exclusion by satisfying the trial judge that the challenge was prompted by a racially neutral reason related to the particular case to be tried. The Supreme Court further held that if the prosecutor did respond to the prima facie case with an explanation, the trial judge would then have the duty to determine if the defendant had established purposeful discrimination. *Id.* at 97–98, 106 S.Ct. at 1723–24. While making clear that these broad principles of equal protection applied to the exercise of peremptory challenges, the Supreme Court declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." *Id.* at 99, 106 S.Ct. at 1724.

Although *Batson* was not decided until eight days after the completion of the trial in this case, it is fully applicable. In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that *Batson* applies to all cases pending direct appeal at the time that decision was announced.

Isaac Gray is a black man who was charged with the first degree rape of a white woman. At the conclusion of the jury selection process, but before the jury had been sworn, the defendant moved for a mistrial, contending that the prosecutor had exercised his peremptory challenges against black jurors in a racially discriminatory manner. Specifically, he contended that the prosecutor had used four of his ten challenges to excuse half of the total number of black

jurors [1] in the venire, and that under such circumstances the prosecutor should be required to explain why he had challenged each black juror. The prosecutor responded, "Let me get my jury list." At that point, however, the trial judge interjected the view that the prosecutor was not required to give reasons for the exercise of peremptory challenges.[2] The prosecutor agreed, and apparently did not retrieve his jury list, but did volunteer some information. He said that he had not systematically excluded black jurors; that he could recall having struck one black juror who had informed the court that he was personally acquainted with the defendant's attorney; that he could not then recall who the other black jurors were; and, that "it's very difficult to articulate the reasons one selects and does not select a jury. Sometimes it's just their demeanor, their appearance, their body language—it may be their age, their occupation." The prosecutor also pointed out that the jury as impaneled included one black juror and one black alternate juror. The trial judge denied the motion for a mistrial.

Gray was convicted, after which he filed a timely motion for a new trial. At the hearing of that motion, he argued that under the recently announced principles of *Batson* a prima facie case of discrimination had been established, and in the absence of a satisfactory explanation by the prosecutor the defendant was entitled to a new trial. The prosecutor responded by categorically denying that he had exercised his challenges in a racially discriminatory manner, and reminded the trial judge of a recent case in which the prosecutor had agreed that the trial be postponed to await a new jury panel because no black jurors were on the first venire. He then stated to the court the reasons he struck each black juror. The trial judge denied the motion for a

---

1. For convenience, we use the term "juror" instead of the more precise terms of "prospective juror" or "venireperson."

2. The trial judge correctly stated the law as it then appeared to be under *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

new trial, stating that he did not believe the Supreme Court intended *Batson* to be applied retroactively, and that in any event the proportion of two blacks to fourteen jurors selected exceeded the ratio of blacks to the general population of the county.

Gray appealed, and in an unreported opinion the Court of Special Appeals vacated the judgment and remanded the case to the circuit court for further proceedings. The intermediate appellate court directed that the trial judge determine whether the defendant had made out a prima facie case of racial discrimination and, if so, whether the State had satisfactorily rebutted the presumption. This is a remedy we have specifically approved. *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989) [Nos. 146 & 166, September Term, 1987, filed Sept. 8, 1989]; *Stanley v. State,* 313 Md. 50, 542 A.2d 1267 (1988).

At the hearing after remand, counsel for the defendant noted that he had served the prosecutor with a witness subpoena, and requested that the prosecutor be placed under oath before being permitted to offer any further explanation for his challenges. He further requested the right to cross-examine the prosecutor. Gray's counsel argued that the right to a plenary adversary hearing was guaranteed by the principles of due process, effective assistance of counsel, right to compulsory process, and equal protection of the laws. The prosecutor objected, pointing out that the remand was for the purpose of permitting the State to offer an explanation for the challenges if the trial judge found that a prima facie case had been established, and that it was neither necessary nor appropriate to place the prosecutor under oath or to subject him to cross-examination. The trial judge agreed with the prosecutor, and quashed the subpoena.

After hearing further arguments of counsel, the trial judge held that the defendant had not shown a prima facie case of racial discrimination. As a prudent precaution, however, the trial judge directed that the parties proceed

with the second stage of the *Batson* hearing so that he might furnish an alternative ruling on the adequacy of the State's explanations for the challenges. The prosecutor then addressed the reasons for each challenge, largely repeating the explanations given earlier at the hearing of the motion for a new trial, but also providing some additional information.

Counsel for the defendant elected not to present any evidence in rebuttal, nor did he suggest any questions that he wished the court to put to the prosecutor. He did not argue that the reasons assigned should not be accepted. He said, simply:

> Your Honor, it's just a rehash of what he said at the motion for new trial. Rather than just repeat myself, I know the morning's getting late, I have nothing further to add, other than I—I just object to the fact that he can represent these things and, and not testify to them.

The trial judge then found that had a prima facie case of racial discrimination been presented, he would have found that the State's explanation "was entirely adequate to overcome the prima facie showing." The trial judge thereupon reinstated the earlier judgment of conviction. Gray again appealed, raising only two issues:

I.  The trial court erred in ruling that the defense failed to establish a prima facie showing of racial discrimination in the prosecutor's exercise of peremptory challenges.

II. The trial court erred in refusing to require the prosecutor to testify under oath and subject to cross-examination.

In a second unreported opinion, the Court of Special Appeals affirmed. The court felt that Gray's argument on the establishment of a prima facie showing was "not without some merit," but it did not believe the trial judge was clearly erroneous. On the second issue, the court noted that attorneys are under a strong ethical obligation to "not

knowingly make a false statement of material fact or law to a tribunal," [3] and that the trial court did not err in refusing to require the prosecutor to testify under oath and be subjected to cross-examination. We granted Gray's petition for certiorari on the same questions he raised before the Court of Special Appeals, and we affirm.

Unlike the situation usually presented by the progeny of *Batson*, here we are not called upon to review the trial judge's ruling on the adequacy of the prosecutor's explanations for the exercise of the peremptory challenges. That question was not presented to the Court of Special Appeals, and no attempt was made to bring it before us. The defendant conceded at oral argument that the explanations given by the prosecutor were of the type that had been accepted by appellate courts as sufficient to support a trial judge's finding that the presumption of purposeful discrimination had been rebutted. Therefore, he concluded that on the present state of the record he could not successfully attack that finding. Gray's counsel argued strenuously, however, that the trial judge and the Court of Special Appeals erred in failing to find that a prima facie case had been established, and in not requiring that the prosecutor be placed under oath before giving his explanations and be subjected to cross-examination.

In the view we take of this case, we need not answer the first question. Rather, we shall assume for the purpose of discussion that a prima facie case was established, and affirm on the ground that the trial judge did not abuse his discretion in refusing the defendant's request that the prosecutor be placed under oath and subjected to cross-examination.

The Supreme Court specifically declined "to formulate particular procedures to be followed upon a defendant's

---

3. Rule 3.3(a)(1), The Maryland Lawyers' Rules of Professional Conduct.

timely objection to a prosecutor's challenges." [4]  *Batson,* 476 U.S. at 99, 106 S.Ct. at 1724.  The response of courts across the country has created a rather wide spectrum, ranging from those that recommend an adversary proceeding of some type to those that permit the prosecutor's explanation to be received in camera and ex parte.  The defendant has not referred us to a case, nor have we found one, in which an appellate court has held that the defendant has an absolute right to require that a prosecutor be placed under oath and be subjected to cross-examination in every *Batson* proceeding.  The majority of courts and, in our judgment, the better reasoned opinions, recognize the broad variety of circumstances under which the need to have the prosecutor explain his challenges may arise, and properly afford to the trial judge broad discretion to determine how the inquiries will be conducted.

It has long been recognized that a trial judge has broad discretion in regulating the conduct of a trial.  *McCray v. State,* 305 Md. 126, 133–34, 501 A.2d 856 (1985); *Trimble v. State,* 300 Md. 387, 401–02, 478 A.2d 1143 (1984); *United States v. Thompson,* 827 F.2d 1254, 1257–58 (9th Cir.1987). On the other hand, as the United States Court of Appeals for the Ninth Circuit pointed out in *United States v. Thompson, supra,* 827 F.2d at 1257, "adversary proceedings are the norm in our system of criminal justice, *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), and ex parte proceedings the disfavored exception."

■  We recognize that there may be rare instances in which the reason assigned by the prosecutor for the exercise of a peremptory challenge should not be made public, as where the juror in question is the subject of a secret criminal investigation being carried out by the prosecutor's office.  Even in such cases, however, the information

---

4.  Nor does the procedure actually followed in Batson's case provide any guidance.  On remand, James Batson's plea of guilty was accepted before any hearing on racial discrimination could be held.

should be shared with the defense team wherever possible. In those very rare cases where the prosecutor's explanation, or documentary evidence in support of it, cannot be disclosed to the defense, a sealed record of what is disclosed to the court should be made. *See United States v. Garrison*, 849 F.2d 103, 106–07 (4th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988). Absent some such compelling justification, "ex parte proceedings are anathema in our system of justice and, in the context of the criminal trial, may amount to a denial of due process." *United States v. Thompson, supra*, 827 F.2d at 1258–59.

■ Ordinarily, the need for an explanation by the prosecutor will arise in the course of the jury selection proceedings, and probably most often when the parties are at the bench and the jury venire is in the courtroom. More often than not, simply calling upon the prosecutor to explain the reasons for the challenge, and offering the defendant the opportunity to rebut the explanation, will suffice. *See* Note, *Defense Presence and Participation: A Procedural Minimum for Batson v. Kentucky Hearings*, 99 Yale L.J. 190 (1989) (defense must be present to hear and rebut prosecution's reasons). The prosecutor, as well as the defense attorney, is an officer of the court. *Attorney Griev. Comm'n v. Levitt*, 286 Md. 231, 237, 406 A.2d 1296 (1979). As the Court of Special Appeals pointed out in this case, Rule 3.3 of the Maryland Lawyers' Rules of Professional Conduct requires that "[a] lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal." We have said that "no moral character qualification for bar membership is more important than truthfulness and candor." *Attorney Griev. Comm'n v. Levitt, supra*, 286 Md. at 238, 406 A.2d 1296. A trial judge calling upon the prosecutor to explain his challenges has every right to expect total candor without resorting to the administration of an oath.

■ The question of the defendant's right to cross-examine the prosecutor is somewhat more difficult. In our

adversary system of justice, cross-examination enjoys an exalted position. Professor Wigmore has referred to cross-examination as "the greatest legal engine ever invented for the discovery of truth." 5 *Wigmore on Evidence* § 1367 at 29 (3d ed. 1940). The prosecutor is a competent witness, *Wilson v. State,* 261 Md. 551, 568–69, 276 A.2d 214 (1971), *Johnson v. State,* 23 Md.App. 131, 140, 326 A.2d 38 (1974), Annot., *Prosecuting Attorney As A Witness In Criminal Case,* 54 A.L.R.3d 100 (1973), and although he may be permitted to give his explanation without the necessity of an oath, there can be no doubt that he is thereby giving evidence on an issue material to the rights of the defendant.

A trial judge faced with a request for cross-examination under these circumstances will have to weigh all of the relevant factors in determining whether to grant the request. We think that more often than not, abandoning the bench conference for a full adversary proceeding will prove unnecessary. Where questions arise in the mind of the trial judge upon hearing the explanation of the prosecutor, the judge should have no reluctance to put those questions to the prosecutor. Similarly, defense counsel should be free to suggest questions to the court or, if the court permits, to address questions directly to the prosecutor in the more informal setting of the bench conference.

In this respect, the proceedings may resemble that which occurs when the court conducts the voir dire examination of a juror at the bench. It is not unusual in such cases for the judge, after completion of his questioning of the juror, to invite other questions by counsel, and quite often to permit direct questioning of the juror at the bench. Given the professionalism that we have every right to expect from both prosecutor and defense counsel, and given the protection of the immediate supervision of the trial judge, we are confident that a proceeding of this type will usually prove sufficient. If the trial judge believes that some other procedure is required, up to and including full adversary

proceedings, that is also within the discretion of the trial judge.[5]

The decision we reach on the procedural requirements of a *Batson* hearing accords with that reached by a majority of the courts considering the issue. *See, e.g., United States v. Roan Eagle,* 867 F.2d 436, 441 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989); *United States v. Lane,* 866 F.2d 103, 104 (4th Cir.1989); *United States v. Tindle,* 860 F.2d 125, 130–31 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3176, 104 L.Ed.2d 1038 (1989); *United States v. Garrison, supra,* 849 F.2d at 106–07; *United States v. Thompson, supra,* 827 F.2d at 1259–61; *State v. Green,* 324 N.C. 238, 376 S.E.2d 727, 728 (1989); *Powell v. State,* 187 Ga.App. 878, 372 S.E.2d 234, 235–36 (1988). *See also United States v. Romero–Reyna,* 867 F.2d 834 (5th Cir.1989) (implicitly approving procedure of receiving prosecutor's explanation at sidebar conference).[6]

*United States v. Davis,* 809 F.2d 1194, 1202 (6th Cir.), *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3234, 97 L.Ed.2d 740 (1987), is to the contrary, but the holding of that case is not helpful to the defendant in the matter before us. The Sixth Circuit there held that once the defendant had established a prima facie case the matter was one for the government

---

**5.** The State has argued as an additional reason for not permitting the prosecutor to be called as a witness that by so doing the prosecutor might be disqualified from handling the balance of the case. Rule 3.7 of The Maryland Lawyers' Rules of Professional Conduct provides that a lawyer should ordinarily not act as advocate at a trial in which the lawyer is likely to be a necessary witness. Although this Rule may suggest the advisability of having a second prosecutor available, whenever practicable, to argue the *Batson* matter to the court when another prosecutor has been required to formally testify, this Rule would in no way impair the ability of the testifying prosecutor to proceed with the trial on the merits.

**6.** This case may also be notable for the chutzpah of the Assistant United States Attorney in advancing as a reason for striking a juror that, "I have a P rule, I never accept anyone whose occupation begins with a P. He is a pipeline operator." This is indeed an interesting explanation for a prosecutor.

and the court, and the defendant could not complain when the prosecutor's explanation was given ex parte in chambers. While we do not agree with Gray's claim that he is in all events entitled to subject the prosecutor to cross-examination under oath, neither do we agree with the Sixth Circuit's position at the other end of the spectrum.

In *United States v. Tucker*, 836 F.2d 334 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989), the Seventh Circuit agreed with the Sixth Circuit that an adversary hearing is not required after a prima facie case of racial discrimination has been established, and it approved a proceeding in which the prosecutor had presented his explanation ex parte in camera. The *Tucker* Court added, however, that:

> [d]espite this conclusion, we believe that adversarial hearings are the appropriate method for handling most *Batson*-type disputes. In this case, for example, we believe that the prosecution could have explained its reasons for excluding the four black venirepersons in open court. Thus, while we hold that it is up to the trial judge to decide what procedure is best-suited for a particular case, we trust that the trial judge will utilize an adversarial procedure whenever possible.

*Id.* at 340.

We recognize that we have primarily addressed the procedures to be followed in a *Batson* proceeding arising during the process of jury selection, and that somewhat different factors operate to guide the exercise of a trial judge's discretion in a post-trial hearing. The exigencies of being in the midst of trial-like proceedings with a jury venire present in the courtroom militate in favor of the more summary proceeding we have discussed, while the comparative calm of a post-trial hearing may operate in favor of the defendant's request for more formal proceedings. Moreover, where there has been the passage of considerable time between the event and the attempt at reconstruction, there may be present an increased danger of perfectly innocent confabulation, which in turn may lead the trial judge to

decide that cross-examination, and even cross-examination under oath, would be appropriate. Indeed, in several of the cases involving *Batson* remand hearings, we note the parties proceeded by way of sworn testimony and cross-examination without discussion or complaint. *See, e.g., Chew v. State, supra,* 317 Md. 233, 562 A.2d 1270; *Shelton v. State,* 521 So.2d 1035 (Ala.Cr.App.1987); *People v. Buckley,* 168 Ill.App.3d 405, 118 Ill.Dec. 631, 522 N.E.2d 86 (1988).

■ Notwithstanding these considerations, we find that the refusal of the trial judge to require the prosecutor to testify under oath or to permit cross-examination did not amount to an abuse of discretion in this case. The defendant at all times treated these matters as being within his absolute right. They were not. He at no time addressed the discretion of the court or suggested how cross-examination might be beneficial. Nor did he ask that the court propound any questions to the prosecutor, or suggest any areas of concern with the explanations given by the prosecutor. He opted, instead, to insist upon an absolute right that did not exist.

Moreover, this was not a case in which the prosecutor was attempting for the first time to reconstruct what had occurred at the trial. The prosecutor had given explanations for the peremptory challenges at the hearing of the motion for a new trial, and his explanation after remand was essentially the same. Although the trial judge might well have permitted cross-examination under these circumstances, we cannot say that he abused his discretion in failing to do so.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONER.